[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14626
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cr-00505-SCJ-ECS-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TERRY TYRONE HARDMAN,
a.k.a. Terry Hardman,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

Before HULL, MARCUS and DUBINA, Circuit Judges.

DUBINA, Circuit Judge:

This appeal comes before us on a motion to dismiss based on the appeal

waiver contained in Appellant Terry Hardman's plea agreement.  Because we

conclude that Hardman's appeal waiver does not cover his appeal of the district court's Rule 35(b) sentence modification, we deny the motion.

## I.  BACKGROUND

In 2011, Hardman pleaded guilty to conspiring to possess five kilograms of cocaine with the intent to distribute it.  His plea agreement included a general waiver of appeal.

> To the maximum extent permitted by federal law, [Hardman] voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to Title 28, United States Code, Section 2255) on any ground, except that [Hardman] may file a direct appeal of an upward departure or an upward variance from the sentencing Guideline range as calculated by the District Court.

(DE 44-1 at 11.)  The agreement further provided that a government appeal would release Hardman from his waiver.  Hardman signed the plea agreement, verifying that he read and understood it, discussed it with his attorney, and voluntarily agreed to it.  His attorney and the Assistant United States Attorney also signed the plea agreement.

During the colloquy at Hardman's plea hearing, the district court specifically addressed the appeal waiver.  The court asked Hardman if he understood "that as part of [his] plea agreement," he was "giving up [his] right to appeal [his] sentence unless there is an upward departure from the Guidelines or an appeal by the government."  (Plea Hearing Transcript at 21.)  Hardman told the court he

2

understood and denied that anyone "used any force, threat of force," or promises other than the plea agreement to induce him to waive his right to appeal. (Plea Hearing Transcript at 21-22.) The court concluded that the plea agreement was knowing and voluntary and accepted his guilty plea.

At a December 2011 sentencing hearing, the district court granted the government's motion for a one-level downward departure based on Hardman's substantial assistance. The court ultimately sentenced Hardman to 235 months' imprisonment, a sentence falling at the bottom of the Guidelines range that the court calculated and below the statutory minimum of 240 months. *See* 18 U.S.C. § 3553(e) (permitting a sentence below the statutory minimum based on a defendant's substantial assistance). At the close of sentencing, the district court reminded Hardman of his appeal waiver, and he indicated he had no questions about his appellate rights.

In May 2013, the government moved to reduce Hardman's sentence under Federal Rule of Criminal Procedure 35(b), which allows for a postsentencing motion to reduce the sentence of a defendant who provides substantial assistance to the government.[1] The district court granted the government's motion and reduced his sentence from 235 months to 223 months.

---

[1] Generally, the government must make such motions "within one year of sentencing." Fed. R. Crim. P. 35(b)(1). Under certain limited circumstances, however, the government may

Several months later, the government filed a second Rule 35(b) motion. This time the government sought a 35-month reduction, which would bring Hardman's sentence down to 188 months. Hardman supported the government's motion but went further: He asked the district court for an additional 20-month reduction, or a one-level reduction under the Guidelines, that would reduce his sentence to 168 months. The government opposed his efforts, arguing that a 188-month sentence appropriately reflected the degree of his assistance. After a hearing and with the benefit of oral argument, the district court granted the government's motion but declined Hardman's request for further reduction. Hardman's sentence was reduced to 188 months.

Hardman timely appealed the district court's ruling on the second Rule 35(b) motion, and the government moved to dismiss the appeal based on the appeal waiver. Absent extraordinary circumstances, we resolve such motions to dismiss before requiring the government to file an appellee's brief. 11th Cir. R. 31-1(c); *United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997).

## II. DISCUSSION

We review the validity of appeal waivers *de novo*. *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008). An appeal waiver is valid only if it was

move the sentencing court later to reduce a defendant's sentence. *See* Fed. R. Crim. P. 35(b)(2) (listing such circumstances).

4

made knowingly and voluntarily.  *Id.*  For an appeal waiver to be enforced, "the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." *United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001).  A valid and enforceable appeal waiver, however, only precludes challenges that fall within its scope.  *Cf. United States v. Carruth*, 528 F.3d 845, 846 (11th Cir. 2008) (rejecting the government's argument that the scope of the defendant's appeal waiver in his original plea agreement extended to his later revocation of supervised release).[2]

---

[2] All eleven of our sister circuits with criminal jurisdiction agree on this point.  *See, e.g.*, *United States v. Santiago-Burgo*, 750 F.3d 19, 22–23 (1st Cir. 2014) ("Even a knowing and voluntary appeal waiver only precludes appeals that fall within its scope." (alteration omitted)); *United States v. Oladimeji*, 463 F.3d 152, 156 (2d Cir. 2006) ("As a preliminary matter, we must determine whether [the defendant's] challenges to the restitution order fall within the scope of his appeal waiver."); *United States v. Grimes*, 739 F.3d 125, 128–29 (3d Cir. 2014) ("We will enforce an appellate waiver and decline to review the merits of an appeal where we conclude (1) that the issues [the defendant] pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice." (first alteration omitted) (quoting *United States v. Wilson,* 707 F.3d 412, 414 (3d Cir. 2013) (internal quotation marks omitted))); *United States v. Davis*, 689 F.3d 349, 354–55 (4th Cir. 2012) ("We . . . will enforce the waiver if it is valid and the issue appealed is within the scope of the waiver."); *United States v. Rodriguez-Estrada*, 741 F.3d 648, 651 (5th Cir. 2014) (holding that defendant's knowing and voluntary appeal waiver warranted dismissing the appeal because the issue on appeal was within the waiver's scope); *United States v. Droganes*, 728 F.3d 580, 586 (6th Cir. 2013) ("With limited exceptions, we will enforce [an express appellate-waiver] if the defendant entered into it knowingly and voluntarily, and if the scope of the waiver extends to the issues raised on appeal."); *United States v. Chapa*, 602 F.3d 865, 868 (7th Cir. 2010) ("For the waiver to be enforceable, the disputed appeal must fall within its scope."); *United States v. Selvy*, 619 F.3d 945, 950–51 (8th Cir. 2010) ("When we review an appeal waiver, we must make two determinations: that the issue falls within the scope of the waiver and that both the plea agreement and the waiver were entered into knowingly and voluntarily." (quoting *United States v. Snelson*, 555 F.3d 681, 685 (8th Cir. 2009) (alternations omitted) (internal quotation marks omitted))); *United States v. Anglin*, 215 F.3d 1064, 1066 (9th

5

Plea agreements, like contracts, should be interpreted consistent with the parties' intent. *United States v. Rubbo*, 396 F.3d 1330, 1334 (11th Cir. 2005). The language of a plea agreement should be given its ordinary and natural meaning unless the parties indicate otherwise. *See id.* at 1334–35. Indeed, in determining the meaning of disputed terms, the court applies an objective standard and eschews both "a hyper-technical reading of the written agreement" and "a rigidly literal approach in the construction of the language." *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004) (quoting *United States v. Jefferies*, 908 F.3d 1520, 1523 (11th Cir. 1990)) (internal quotation marks omitted). Ambiguous terms are construed against the government. *Id.* at 1105–06.

Here, consistent with our precedent and Federal Rule of Criminal Procedure 11(b)(1)(N), the district court explicitly discussed the appeal waiver with Hardman at his plea hearing. During this colloquy, the district court verified that he understood that he was "giving up [his] right to appeal [his] sentence unless there is an upward departure from the Guidelines or an appeal by the government" and

Cir. 2000) ("The scope of a knowing and voluntary waiver is demonstrated by the express language of the plea agreement."); *United States v. Lonjose*, 663 F.3d 1292, 1297 (10th Cir. 2011) (holding that appeal waivers are valid and enforceable where "(1) the disputed issue falls within the scope of the waiver of appellate rights; (2) the defendant knowingly and voluntarily waived his appellate rights; and (3) enforcing the waiver would not result in a miscarriage of justice"); *In re Sealed Case*, 702 F.3d 59, 63–65 (D.C. Cir. 2012) (holding that the defendant did not "knowingly waive his right to appeal the restitution order" because the language of the appeal waiver was ambiguous and his Rule 11 colloquy did not make clear that the waiver covered the restitution order).

6

that no one had coerced him into waiving his right to appeal.  (Plea Hearing Transcript at 21–22).

To be sure, Hardman knowingly and voluntarily waived the right to appeal his sentence subject to a limited number of exceptions.  Because dissatisfaction with the district court's Rule 35(b) order is not such an exception, the government contends that Hardman's appeal should be dismissed.  Hardman responds that the waiver does not bar this appeal because he is not challenging his original sentence but rather the district court's modification of his sentence.  The question is thus whether the government has established that Hardman's waiver unambiguously forecloses an appeal from a Rule 35(b) sentence modification.

We begin with the text of the plea agreement.  The waiver provides that Hardman "voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding . . . on any ground."  (DE 44-1 at 11.)  The agreement does not define "sentence" or specify whether its use of "sentence" includes modifications of that sentence.  Nor does the Rule 11 colloquy reveal whether "sentence" as used in the appeal waiver extends to sentence modifications.

Indeed, nothing in the record indicates that the parties intended "sentence" to refer to anything other than the judgment that the district court would impose after conducting the sentencing hearing.  For example, Hardman's waiver links his

7

conviction with his sentence, barring him from "appeal[ing] his conviction and sentence." Similarly, the district court's questions during the Rule 11 colloquy focused on the sentence that Hardman would receive following the sentencing hearing. That the waiver and district court made such connections is unsurprising. After all, the ordinary meaning of "sentence" is "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty." Black's Law Dictionary 1569 (10th ed. 2014); *see also id.* at 1485 (9th ed. 2009) (same).

We next turn to the text of Rule 35 and its use of the term "sentence." The Rule's language implies that when a court grants a Rule 35 motion, it modifies the existing sentence rather than imposes an entirely new sentence. Fed. R. Crim. P. 35 (explaining when a "court may reduce a sentence"); *see also* 18 U.S.C. § 3582(c)(1)(B) (providing that while courts generally cannot modify a term of imprisonment, they may do so in accordance with Rule 35). Given that a Rule 35 order modifies the defendant's existing sentence, one might insist that a sentence-appeal waiver includes a modification that sentence. That reading, however, must be rejected as "rigidly literal" in light of how Rule 35(b) motions are treated.

First, a Rule 35(b) motion triggers "a separate proceeding," *United States v. Moreno*, 364 F.3d 1232, 1234 (11th Cir. 2004) (per curiam) (quotation marks omitted), though one that is "part of the sentencing process," *United States v. Chavarria-Herrara*, 15 F.3d 1033, 1036 (11th Cir. 1994). The primary focus of

8

such a proceeding is the substantiality of the defendant's postsentencing assistance to the government.[3] *See* Fed. R. Crim. P. 35(b)(1) (providing that postsentencing the court may reduce a sentence if the defendant has "provided substantial assistance in investigating or prosecuting another person"); *see also Pepper v. United States*, 131 S. Ct. 1229, 1248 n.15 (2011) ("Rule 35(b) departures address only postsentencing cooperation with the Government, not postsentencing rehabilitation generally, and thus a defendant with nothing to offer the Government can gain no benefit from Rule 35(b)."); *Murphy v. United States*, 634 F.3d 1303, 1307 (11th Cir. 2011) ("Rule 35(b) permits a district court, upon the Government's motion, to reduce a sentence to reflect a defendant's substantial assistance rendered *after* the entry of judgment."). A Rule 35(b) proceeding thus stands in contrast to postconviction sentencing hearing, which generally focuses on the defendant's presentencing criminal conduct. *See generally* Fed. R. Crim. P. 32. In the end, a "Rule 35(b) motion is merely a plea for lenience, a matter of executive and judicial grace." *Murphy*, 634 F.3d at 1313 (quotation marks and alteration brackets omitted) (quoting *Brown v. United States*, 480 F.2d 1036, 1039 (5th Cir. 1973)).

---

[3] To be clear, while the defendant's substantial assistance is the primary focus of a Rule 35(b) proceeding, the district court need not confine its analysis to this question. On the contrary, our precedent is clear that the district court can refuse to grant the government's motion, either in full or in part, based on other factors. *See United States v. Manella*, 86 F.3d 201, 204 (11th Cir. 1996) ("[T]he only factor that may militate *in favor of* a Rule 35(b) reduction is the defendant's substantial assistance. Nothing in the text of the rule purports to limit what factors may militate *against* granting a Rule 35(b) reduction. Similarly, the rule does not limit the factors that may militate in favor of granting a smaller reduction.").

The defendant's sentence, on the other hand, is the "[f]inal judgment in a criminal case." *Berman v. United States*, 302 U.S. 211, 212, 58 S. Ct. 164, 166 (1937).

Second, for purposes of appeal, Rule 35(b) modifications are distinct from the sentences that precede them. Federal law permits both criminal defendants and the government to appeal "an otherwise final sentence" under certain circumstances. 18 U.S.C. § 3742. We have held that a ruling on a Rule 35(b) motion—regardless of whether the district court "reduce[s] the sentence that was previously imposed or leave[s] it undisturbed"—constitutes "an otherwise appealable final sentence" and is thus appealable so long as the resulting sentence meets one of the criteria for appeal in § 3742. *See Chavarria-Herrara*, 15 F.3d at 1034–35. As a result, a Rule 35(b) modification creates a separate right to appeal, offering another distinction from the sentence itself. *See Lonjose*, 663 F.3d at 1299–1300 (reasoning that "a post-conviction modification of a term of imprisonment under [18 U.S.C.] § 3582(c) creates a new right of appeal that is separate from the defendant's right to appeal his original sentence").

In short, given the silence of the plea agreement and Rule 11 colloquy on whether the waiver covers later sentencing modifications and the practical differences between a Rule 35 modification and a sentence in a criminal case, we conclude that the term "sentence" in Hardman's appeal waiver is ambiguous. Construing this ambiguity in his favor, as we must, *Copeland*, 381 F.3d at 1105–

10

06, we conclude that the waiver does not reach his appeal of the district court's ruling on the government's second Rule 35(b) motion.

Though the parties do not cite, and our research did not reveal, binding authority on whether a general appeal waiver extends to a Rule 35 modification, our own precedent outside the Rule 35 context supports our conclusion that Hardman's waiver does not reach his appeal. For instance, we have held that a sentence waiver did not reach the defendant's appeal challenging his supervised release revocation. *Carruth*, 528 F.3d at 846. We explained, "[t]here was no specific language in the original plea waiver indicating that Carruth's willingness to waive his right to appeal from a sentence entered in accordance with the original plea was also a waiver of his right to appeal from his future supervised release revocation." *Id.*; *see also Lonjose*, 663 F.3d at 1299 (allowing defendant's appeal of modifications of his supervised release conditions despite his waiver of the "right to appeal any sentence within statutory range"). Though Carruth's sentence was not modified under Rule 35, the Rule 35 modification Hardman challenges is similar to Carruth's revocation of supervised release. In both cases, the district court, on the government's motion, altered the defendant's sentence based on postsentencing events. That Carruth's waiver did not prevent his appeal challenging the modification of his supervised release suggests Hardman's waiver

11

should not prevent his appeal of the district court's ruling on the Rule 35 modification.

Our unpublished decisions addressing other sentence modifications are also persuasive. Generally, federal law prohibits courts from modifying terms of imprisonment once imposed. 18 U.S.C. § 3582(c). Rule 35 modifications, § 3582(c)(1)(B), and sentence reductions allowed after retroactive amendment of the U.S. Sentencing Guidelines, § 3582(c)(2), are two exceptions to that general rule. At least twice, we have allowed a defendant to appeal a ruling on a sentence reduction—and to seek such a reduction in the first place—following a retroactive Guidelines amendment, despite an appeal and collateral attack waiver like the one that binds Hardman. *See United States v. Jones*, 334 F. App'x 279, 280 n.1 (11th Cir. 2009) ("Neither the language of the plea agreement nor the Rule 11 colloquy attending the district court's acceptance of Jones's guilty plea contemplated a waiver of rights in the event of a retroactive guidelines amendment . . . ."); *United States v. Strachan*, 319 F. App'x 774, 776 (11th Cir. 2009) (relying in part on the waiver's ambiguity about "whether it cover[ed] the appeal of a new sentence imposed pursuant to § 3582(c)(2)" to conclude that the appeal did not warrant dismissal).

Other circuits, when confronted with the same question, have reached like results. *See, e.g.*, *United States v. Tercero*, 734 F.3d 979, 981 (9th Cir. 2013)

12

(holding that an appeal waiver relinquishing "any right . . . to appeal any aspect of [the defendant's] sentence" did not preclude the defendant from appealing a § 3582(c)(2) decision); *United States v. Cooley*, 590 F.3d 293, 297 (5th Cir. 2009) ("hold[ing] that a motion for sentence modification under 18 U.S.C. § 3582(c)(2) is not properly considered an 'appeal' or 'collateral proceeding' under the terms of a general waiver of appeal"); *United States v. Woods*, 581 F.3d 531, 536 (7th Cir. 2009) (concluding that a general appeal waiver did not prevent a defendant from seeking § 3582(c)(2) sentence reduction). *But see United States v. Thornsbury*, 670 F.3d 532, 538 (4th Cir. 2012) (holding that because a "denial of a Rule 35(b) motion is part of a defendant's sentence" under circuit precedent, a defendant who waived his right to appeal "any sentence" waived his right to appeal a Rule 35(b) determination). We see no meaningful distinction between the Rule 35 modification here and other § 3582 modifications that our court and others have allowed defendants to seek and appeal despite general appeal waivers.

We pause to note two limitations of our decision. First, nothing prevents parties from binding themselves to appeal waivers that would cover Rule 35 modifications; we hold only that this agreement and plea colloquy reflect ambiguities that lead us to find for Hardman. Second, no one should mistake this ruling as a comment on the merits of Hardman's appeal.

13

Accordingly, for the aforementioned reasons, we deny the government's motion to dismiss Hardman's appeal.

MOTION DENIED.