[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13315
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cr-00214-WS-B-1

UNITED STATES OF AMERICA,

                                                        Plaintiff-Appellee,

versus

ANTHONY GREENE,

                                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(April 3, 2019)

Before WILSON, GRANT, and HULL, Circuit Judges.

PER CURIAM:

Anthony Greene filed a notice of appeal from his guilty-plea conviction and sentence for possession of a firearm by a convicted felon. On appeal, however, Greene does not challenge his conviction or sentence, but argues instead that the district court should have granted his motion to withdraw from the plea agreement while maintaining his guilty plea. In particular, Greene seeks to avoid enforcement of the appeal waiver in the plea agreement.[1]

The government has moved to dismiss the appeal based on the appeal waiver. We deny the motion to dismiss but affirm the district court's denial of Greene's motion to withdraw from the plea agreement, as well as Greene's conviction and sentence.

## I.

Greene entered a guilty plea to a single count of possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1), pursuant to a written plea agreement. In the plea agreement, Greene acknowledged the charge against him, the truth of the factual basis for the charge, the application of the Sentencing Guidelines, the district court's discretion in sentencing, and the maximum penalties that could be imposed; he agreed to waive his constitutional trial rights and plead guilty to the single count of the indictment; and he stated that his plea was freely and

---

[1] Greene does not challenge his guilty plea, conviction, or sentence; nor does he identify any issues that he would raise on direct appeal if he were released from the plea agreement appeal waiver. Presumably, he seeks to preserve the option to file a collateral attack.

voluntarily entered.  He also agreed to waive his statutory rights to file any direct appeal or collateral attack, with limited exceptions.  In exchange, the government promised not to bring additional related charges and to recommend a sentence at the bottom of the Guidelines range.

The plea agreement also contained statements that Greene had read the agreement and "carefully reviewed every part of it" with his attorney, that he was not under the influence of drugs or alcohol and was "certain that he [was] in full possession of his senses and [was] mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow," and that he understood the agreement and voluntarily agreed to it.  On the last page of the agreement, Greene's counsel signed a statement that he had "fully explained" Greene's rights to him and "carefully reviewed every part of this Plea Agreement" with Greene. Counsel further stated that, to his knowledge, Greene's decision to stipulate to the attached factual basis and enter into the plea agreement was an informed and voluntary one.

The district court held a Rule 11 change-of-plea hearing and accepted Greene's guilty plea.  During the hearing, the district court discussed the written plea agreement, specifically including the appeal waiver, with Greene.  Greene confirmed that he had read and signed the plea agreement, that he had reviewed it with his attorney, that he "fully underst[oo]d the terms and conditions of the plea

3

agreement and the factual resume," and that he agreed with those terms and conditions. During the hearing, Greene occasionally paused and asked the court a question or consulted with his attorney before responding to the district court's questions. Before accepting Greene's plea, the district court found that Greene was "fully competent and capable of entering an informed plea."

After the court accepted Greene's guilty plea but before sentencing, Greene was evaluated by two different psychologists, one retained by defense counsel and one employed by the government. The two psychologists identified similar issues—both determined that Greene was borderline intellectually disabled with significant impairments in reading comprehension, milder deficits in verbal comprehension and reasoning, and severe attention deficit/hyperactivity disorder—but reached opposite conclusions. The defense psychologist concluded that Greene was not competent to stand trial; the government psychologist concluded that he was competent. The government psychologist also specifically found that Greene had a basic understanding of plea bargains and was able to tell a good bargain from a bad one in the context of penalties for the crime charged.

Greene subsequently filed a motion to withdraw from the written plea agreement. At a hearing on the motion, Greene's counsel explained that the defense psychologist had changed his mind and now agreed that Greene was mentally competent to understand the Rule 11 plea colloquy, plead guilty, and be

4

sentenced, but that the psychologist also believed that Greene could not understand the vocabulary used in the written plea agreement because of his intellectual deficits, particularly his impaired reading comprehension. Defense counsel argued that, because Greene was not able to read and understand the document memorializing the plea agreement, his decision to enter into the agreement was not an informed one. He asked that Greene be permitted to withdraw from the plea agreement but maintain his guilty plea or, in the alternative, withdraw his plea and enter a new "blind" guilty plea without a plea agreement.

Defense counsel again confirmed that he had read the plea agreement to Greene and gone over it with him before Greene signed it, and that Greene had indicated at the time that he understood the plea agreement. In fact, Greene himself consistently maintained that he did understand the plea agreement; counsel filed the motion to withdraw from it against his wishes.

The district court denied Greene's motion to withdraw from the plea agreement. Based on the psychologists' reports, Greene's stipulation that he was competent to plead guilty and be sentenced, his personal insistence that he did understand the plea agreement, and his demeanor and answers to the court's questions during the change-of-plea hearing, the court found that Greene was competent to understand the important aspects of the plea agreement and did in fact understand them.

5

Despite the attempted repudiation of the plea agreement, the government upheld its end of the bargain by recommending a sentence at the low end of Greene's Guidelines range of 30–37 months.  The district court sentenced Greene to 30 months in prison followed by three years of supervised release.

## II.

"We review the validity of appeal waivers *de novo*."  *United States v. Hardman*, 778 F.3d 896, 899 (11th Cir. 2014).  A district court's decision regarding competency is a factual finding reviewed only for clear error, whether the issue is competency to stand trial, plead guilty, or waive postconviction review.  *United States v. Hogan*, 986 F.2d 1364, 1371 (11th Cir. 1993).  Similarly, we review a district court's finding that the defendant's guilty plea was knowing and voluntary only for clear error.  *United States v. Presendieu*, 880 F.3d 1228, 1240 (11th Cir. 2018).  "A finding of fact is clearly erroneous only when we are left with a definite and firm conviction that a mistake has been committed."  *Hogan*, 986 F.2d at 1372 (citation and punctuation omitted).  And a district court's ruling on a defendant's motion to withdraw his guilty plea is reviewed for an abuse of discretion.  *United States v. Izquierdo*, 448 F.3d 1269, 1276 (11th Cir. 2006).

III.

A.

We begin with the government's motion to dismiss the appeal based on the appeal waiver in the plea agreement. The government argues that the terms of the waiver are broad enough to cover any appeal, even if Greene does not challenge his guilty plea, conviction, or sentence. But as we have held before, a plea-agreement appeal waiver does not bar a challenge to the validity of the agreement itself. "'Waivers of appeal must stand or fall with the agreements of which they are a part. If the agreement is voluntary, and taken in compliance with Rule 11, then the waiver of appeal must be honored. If the agreement is involuntary, or otherwise unenforceable, then the defendant is entitled to appeal.'" *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1284 (11th Cir. 2015) (quoting *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995)); *see also United States v. Carreon-Ibarra*, 673 F.3d 358, 362 n.3 (5th Cir. 2012) (an appeal waiver cannot "bar a claim that the waiver itself—or the plea agreement of which it was a part—was unknowing or involuntary").

The sole issue raised on appeal is whether Greene was competent to enter the plea agreement. Greene argues, essentially, that he did not knowingly and voluntarily accept the terms of the plea agreement because he could not understand them. This claim is not barred by the appeal waiver because Greene's "appeal

waiver itself would be invalid if he lacked the mental capacity to understand and appreciate the nature and consequences of the plea agreement." *United States v. Wingo*, 789 F.3d 1226, 1234 n.8 (11th Cir. 2015).  Accordingly, we deny the government's motion to dismiss.

## B.

Greene's arguments on appeal present two related issues:  first, whether Greene was mentally competent to enter into the plea agreement—in other words, whether he was capable of understanding the terms of the agreement—and second, whether he actually understood the plea bargain, so that his waiver of rights was knowing and voluntary.  *See Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993).  We address each in turn.

## 1.

The basis for Greene's motion to withdraw from the plea agreement was his apparent inability to read and understand the language used in the written agreement.  But the standard for mental competence does not require that a defendant have a clear understanding of legal terminology, or that he be able to read and understand a legal document without assistance.  *Cf.  Hogan*, 986 F.2d at 1373 ("Even perfectly competent defendants often do not fully comprehend the intricacies of some of the defensive theories offered by their lawyers. That level of comprehension is not a requirement of competency.").  In the absence of evidence

that the defendant was incapable of understanding the proceedings sufficiently to assist counsel, "low intelligence, mental deficiency," or signs of mental illness are insufficient to show incompetence. *Pardo v. Sec'y, Fla. Dep't of Corr.*, 587 F.3d 1093, 1101 (11th Cir. 2009).

The question, then, was not whether Greene could read and understand the written plea agreement on his own, or whether he could define the vocabulary used in the agreement to the satisfaction of the defense psychologist, but whether he was capable of understanding the nature and consequences of the bargain he was making. A defendant bears the burden of showing his mental incompetence by a preponderance of the evidence. *United States v. Bradley*, 644 F.3d 1213, 1268 (11th Cir. 2011).

Greene stipulated—and both psychologists agreed—that he was competent to plead guilty and be sentenced. Based on those representations and the court's own observations of Greene during the change-of-plea hearing, the district court found that Greene was mentally competent to enter his guilty plea, and Greene does not contest that finding on appeal. Thus, we start with the understanding that Greene had "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and "'a rational as well as factual understanding of the proceedings against him.'" *Godinez*, 509 U.S. at 396 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (*per curiam*)) (discussing standard for

9

competence to stand trial or plead guilty); *United States v. Rodriguez*, 751 F.3d 1244, 1252 (11th Cir. 2014); *see also Eggers v. Alabama*, 876 F.3d 1086, 1094 (11th Cir. 2017) (applying test for competence to waive further postconviction review involves determining whether the defendant "suffers from a mental disease, disorder, or defect" that prevents him from "understanding his legal position and the options available to him" or "making a rational choice among his options." (citation and punctuation omitted)).  Indeed, according to defense counsel's representations at the competency hearing, the defense psychologist used a copy of Rule 11 as a checklist and confirmed that Greene was able to understand all of the concepts in Rule 11's "list of things that the court is required to cover and did cover with [Greene] at his plea colloquy."  Those same concepts account for the bulk of the plea-agreement terms, including provisions describing the nature of the crime charged, the factual basis for the charge, the penalties that might be imposed at sentencing, and the terms of the appeal waiver; Greene's acknowledgement and waiver of his constitutional trial rights; and his representations that the plea was knowingly and voluntarily entered.  *See* Fed. R. Crim. P. 11(b)(1)(A)–(N); (b)(2)–(3).

Greene has not identified any specific provision of the plea agreement that he was incapable of understanding once it was read and explained to him by counsel.  The only "evidence" supporting Greene's claim of incompetence was

10

defense counsel's representation that one of the evaluating psychologists was concerned that Greene could not read and understand the written plea agreement. But that same psychologist also verified that Greene could understand all of the concepts from the plea agreement when they were discussed with him during the Rule 11 colloquy, and defense counsel confirmed that he had also read the plea agreement to Greene and "carefully reviewed every part of" it with him.

Moreover, the defense psychologist's opinion was countered by the opinion of the government psychologist, who had the benefit of a much longer testing period and the observations of Federal Medical Center staff; Greene's statements in the plea agreement and under oath during the Rule 11 colloquy that he did understand the plea agreement, including the appeal waiver; and the district court's observations of Greene's demeanor and answers to the court's questions during the change-of-plea hearing.  Under the circumstances, we cannot say that the district court clearly erred in finding that Greene was competent to enter the plea agreement.  *See Izquierdo*, 448 F.3d at 1278 ("'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'"  (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985))).

11

2.

The record also supports the district court's finding that Greene actually did understand the terms of the plea agreement, so that his decision to enter into the agreement was knowing and voluntary. *See Godinez*, 509 U.S. at 400–01 & n.12. Defense counsel confirmed that Greene had seemed to understand the plea agreement when it was read and explained to him, and he certified that he believed that Greene's decision to enter into the agreement was "an informed and voluntary one." Greene himself consistently maintained—when reviewing the agreement with his attorney, at the plea colloquy, and even at the motion hearing—that he understood the plea agreement. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014) (statements made by the defendant under oath at the plea colloquy are presumed to be true). The district court's assessment of Greene's demeanor and answers to the court's "very straightforward questions" during the plea colloquy—including questions specifically addressing Greene's understanding of the appeal waiver and other key parts of the plea agreement—also weighed in favor of finding that he understood the agreement. *See United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993) (government may establish that an appeal waiver was knowing and voluntary, and is therefore enforceable, by showing that the district court specifically discussed the appeal waiver with the defendant during the Rule 11 colloquy). On these facts, the district court's finding that Greene

12

understood the plea agreement was not clearly erroneous, and its denial of Greene's motion to withdraw from the plea agreement was not an abuse of discretion.  Greene's convictions and sentences, and the district court's denial of his motion to withdraw from the plea agreement, are therefore **AFFIRMED.**