[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10837

_____

D.C. Docket No. 8:12-cr-00501-MSS-AEP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE MIGUEL CORDERO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 4, 2021)

Before BRANCH, GRANT, and TJOFLAT, Circuit Judges.

BRANCH, Circuit Judge:

Jose Cordero is serving his supervised release term of ten years as part of his

sentence for accessing with intent to view child pornography in violation of 18

U.S.C. § 2252(a)(4)(B) and (b)(2).  He filed motions seeking to clarify, modify, and terminate early his term of supervised release, all of which were denied.  He appeals the district court's denial of those motions as well as the entry of a July 2017 sealed order, which required him to disclose details about work he performs as part of the security company he owns and operates and to inform prospective clients of his sex offender status.  He maintains that the sealed order improperly modified the terms of his supervised release.[1]  After careful consideration and with the benefit of oral argument, we affirm.

## I.    Background

In 2013, Cordero, pursuant to a written plea agreement, pleaded guilty to one count of accessing with intent to view child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).[2]  The factual basis included in the plea agreement

---

[1] Cordero sought unsuccessfully to unseal the July 2017 order in the district court, and he also appeals the substance of the order in this case.  Thus, we discuss the contents of the sealed order herein.

[2] The plea agreement contained a sentence-appeal waiver that provided as follows:

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court . . .; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution[.]

2

indicated that on four separate occasions in 2006, Cordero made credit card purchases via PayPal for access to a website containing child pornography, and a forensic search of his laptop revealed "at least ten but less than 150 images of child pornography."[3]

The district court sentenced Cordero to twelve months and one day of imprisonment to be followed by 120 months' supervised release, consistent with Cordero's request in his sentencing memorandum.[4] The district court acknowledged that the sentence was a "substantial variance," but that the case was "unusual" and fell "far outside the heartland of cases that this statute was intended to reach" given that the child pornography was accessed in 2006 and the court had "no evidence that it was viewed from the time that it was initially placed on the computer up and through today's date." The district court further noted that the variance was warranted because: the government agreed that Cordero had not

---

[3] According to his Presentence Investigation Report ("PSI"), Cordero's laptop was searched in October 2010 by a U.S. Customs and Border Protection Agent when he reentered the United States following a cruise and was randomly selected for further screening. The search revealed images of suspected child pornography. ICE agents then obtained a search warrant for the computer. The forensic search revealed "two videos that depicted minor females engaged in sexual activity." Cordero admitted to law enforcement "that he viewed child pornography online and subscribed to a website that offered images of child pornography." He further admitted that "he accessed Internet websites with the intent to view child pornography."

[4] Cordero's guideline imprisonment range was 37 to 46 months' imprisonment, and his offense carried a term of supervised release of five years to life. Cordero filed a sentencing memorandum requesting that the court impose a downward variance sentence and sentence him to "one year and one day, followed by 10 years of sex offender supervised release." He maintained that the "requested sentence [was] sufficient, but not greater than necessary to achieve the purposes of sentencing set out in [18 U.S.C. §] 3553(a)(2)."

accessed any child pornography since his arrest in 2010; Cordero's risk assessment indicated he was not a predator or sexual deviant; he had a history of "stellar [military] service to the country"; considerable support from his family; and he had not "made any inappropriate actual physical contact with any child."

Cordero did not appeal and, after serving the incarceration portion of his sentence, Cordero began serving his 10-year term of supervised release in 2014. The terms and conditions of his supervised release included the following: (1) "[a]s directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement"; (2) "[t]he defendant shall have no direct contact with minors (under the age of 18), other than his own children, without the written approval of the probation officer and shall refrain from entering into any area where children frequently congregate, including: schools, daycare centers, theme parks, playgrounds, etc."; and (3) "[t]he defendant shall not possess or use a computer with access to any online service at any location (including employment) without written approval from the probation officer. This includes access through any Internet service provider, bulletin board system, or any public or private computer network system."

On July 7, 2017, the district court entered a sealed order concerning

Cordero's supervised release.  The order stated as follows:

> In its Memorandum to the [c]ourt,[5] Probation advises that the
> Defendant is self-employed as the owner and operator of Cordero
> Installation Group (CIG), installing multiple smart home automation
> systems, 'including: security and access control systems, security
> cameras with DVD Back-up, whole home audio and video systems.'
> Probation is concerned that the Defendant may pose a risk to the
> public when he is installing electronic devices in client's homes where
> minor children reside.  Probation is requesting that the [c]ourt approve
> the enforcement of the condition requiring the offender to disclose
> details about the work he performs at private residences and to inform
> prospect employers and customers of the Defendant's sexual offender
> status.  Probation asserts that it is not able to properly assess and
> address any potential third party risks associated with the Defendant's
> employment if it is not allowed to notify a prospective client of the
> Defendant's sexual offender status and inquire as to the duties that the
> Defendant may perform at the prospective job site.
>
> The Defendant objects to Probation notifying prospective
> clients of his sexual offender status contending that he is well known
> in the community and his business may suffer a significant loss.  The

---

[5] There is no copy of this memorandum the district court references in the record. Nevertheless, Cordero does not dispute the government's assertion that, in 2017, Cordero asked his probation officer for permission to travel to California to install a smart-home system in the home of an unnamed celebrity.  The celebrity had agreed to allow him to lodge at the celebrity's home during the installation.  Because the celebrity had minor children in the home, the probation officer refused to authorize the trip unless he spoke with the celebrity.  Cordero declined the job and asked his probation officer not to contact any of Cordero's clients because knowledge of his sex-offender status could harm his business.  A few weeks later, Cordero reported that he was installing home automation systems primarily in houses under construction; that he was transitioning to commercial businesses; that he did not personally install any surveillance cameras inside the homes or any system that required the internet and he did not work alone during any installations.  He requested again that probation not contact any of his clients because of the negative impact his status could have on his business.  Cordero's request prompted the probation officer to file a memorandum with the court advising that in order to assess Cordero's potential risks to any third parties, per the conditions of Cordero's term of supervised release, probation needed Cordero to disclose details about the work he was performing.

Defendant contends that he is very mindful of his sexual offender status. He is transitioning from residential to commercial properties and asserts that most of his installations are in new construction homes that are not yet occupied.

Upon consideration of the foregoing, the Court concurs with Probation's request. Probation has no other means to verify the Defendant's employment activities to ensure compliance with terms and conditions of his supervised release. Furthermore, the need to protect the public outweighs the Defendant's potential business loss. The Court reminds the Defendant that as part of his sentence he was ordered to comply with all terms of his supervised release including Condition Number 13 of the Standard Conditions, which states: 'as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.'

Accordingly, it is ORDERED that Probation's request to enforce the condition requiring the offender to disclose details about the work he performs at private residences and to inform prospect employers of the Defendant's sexual offender status is GRANTED. Moreover, the Court directs that Probation shall likewise obtain information and make disclosures in connection with commercial businesses in which the Defendant may come into contact with minor children or may install devices with the capacity to monitor and conduct surveillance of minor children (i.e. nursery schools, churches, amusement facilities etc.).

Approximately a week after the district court entered the sealed order, Cordero filed a *pro se* "Motion for Clarification" of his supervised release conditions. Cordero did not mention the sealed order. Instead, Cordero asserted that his probation officer had expressed concern that: (1) Cordero could come into contact with minors in homes while he was installing home automation systems;

6

and (2) Cordero's safety could be a risk in the event a client discovered that Cordero was a sex offender while inside the client's home. Cordero stated that he told his probation officer that neither of those scenarios had ever occurred, but that the probation officer stated that he would be informing the district court of his concerns and would also be requesting that the terms of Cordero's supervised release be modified to include a condition that Cordero be subject to polygraph examinations as a means to monitor his compliance with the restriction that he not have direct contact with minor children. Cordero indicated that he was concerned that probation's efforts to enforce restrictions or add additional conditions to his term of supervised release would disrupt his employment and reduce his sole source of income for supporting his family. He asserted that, under Supreme Court precedent, even a casual or chance contact with minors while engaging in his occupation was not sufficient evidence of a violation of the terms of his supervised release, and that his occupation should not be restricted. He also objected to the addition of a polygraph condition.

Prior to the district court ruling on the motion for clarification, Cordero filed a *pro se* motion seeking early termination of his supervised release under 18 U.S.C. § 3583(e)(1). He stated that the 18 U.S.C. § 3553(a) factors supported his request because: (1) he did not produce or distribute child pornography and accepted responsibility for his actions; (2) the offense occurred in 2006, which was

the same year that he discovered that his wife was cheating on him while he was away serving in the military and was a "stressful and psychologically debilitating" time for him; (3) he had no criminal history and had performed exemplary military service; (4) he had since remarried and was employed, provided for his children, and was well-respected in his community; (5) the significant permanent consequences that flowed from his conviction and his sex offender status were adequate to deter him from future criminal conduct; (6) he did not pose a recidivism risk; (7) he had completed two sex offender treatment programs; (8) his offense fell "outside the heartland" of the average child pornography case; (9) there were no identifiable victims in his case; (10) he had complied with the terms and conditions of his supervised release without incident or violation for over 40 months; and (11) he scored a zero on Probation's "Risk Prediction Index." In support of his motion, Cordero attached several excerpts from cases in which other district courts had granted defendants early termination of their supervised release on allegedly similar grounds.

Along with the motion for early termination of his supervised release, Cordero filed a *pro se* motion to modify the conditions of his supervised release under 18 U.S.C. § 3583(e)(2), asserting that the relevant § 3553(a) factors supported the elimination of the internet access restriction. He argued that the condition limiting his internet access was "a greater deprivation of liberty than is

reasonably necessary" to achieve the purposes of § 3553(a) and violated his First Amendment rights, citing *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017).

The government opposed all three motions, and Cordero's probation officer expressly opposed the motion for early termination of supervised release. The district court entered a paperless order denying the motions after noting that it had "considered the motions, the Government's responses in opposition thereto, and that it [was] otherwise fully advised."

Cordero appeals the entry of the July 2017 sealed order and the order denying his motions for clarification, early termination, and modification of his supervised release term.[6] He argues that the district court abused its discretion (1) in various ways when it entered the July 2017 sealed order; (2) when it denied the motion to modify the conditions of his supervised release; and (3) when it denied the motion for early termination.[7] We address each of his arguments in turn.

---

[6] The government affirmatively waives any challenge to the timeliness of the appeal of the sealed order. *See United States v. Lopez*, 562 F.3d 1309, 1313 (11th Cir. 2009) (holding that the 14-day filing deadline in Federal Rule of Appellate Procedure 4(b) is a non-jurisdictional, claims processing rule, which is subject to waiver).

[7] We appointed counsel to represent Cordero at oral argument and counsel filed supplemental briefing and also adopted Cordero's *pro se* arguments.

9

## II.    Discussion

### A.    The July 2017 Sealed Order

Cordero argues that the district court abused its discretion when it entered the July 2017 sealed order because the order impermissibly modified the conditions of his supervised release and imposed a new occupational restriction— by requiring him to disclose information related to work he performs as part of his security business and to disclose his sex offender status to potential clients.[8]

Whether the district court's sealed order constituted a modification of the conditions of Cordero's supervised release presents a question of law, which we review *de novo*. *United States v. Dixon*, 901 F.3d 1322, 1346–47 (11th Cir. 2018); *United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000). We review the modification of supervised release for an abuse of discretion. *See United States v. Serrapio*, 754 F.3d 1312, 1318 (11th Cir. 2014).

---

[8] Cordero also argues for the first time on appeal that the district court plainly erred by sealing the July 2017 order without making particularized findings as to why secrecy was necessary. Although the district court failed to articulate any specific findings regarding the need to seal the order, the only prejudice that Cordero asserts is that the sealing of the order prevented him from filing a timely appeal of that order. However, because the government affirmatively waived any challenge to the timeliness of the appeal of the sealed order, Cordero cannot show that he was prejudiced by the alleged error for purposes of plain error review. *United States v. Clark*, 274 F.3d 1325, 1326 (11th Cir. 2001) ("We will find plain error only where (1) there is an error in the district court's determination; (2) the error is plain or obvious; (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.").

The district court "may, after considering [certain factors set forth in 18 U.S.C. § 3553(a)] . . ."

> modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision.

18 U.S.C. § 3583(e)(2). Under the related Federal Rules of Criminal Procedure, "[b]efore modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation." Fed. R. Crim. P. 32.1(c)(1). A hearing is not required, however, if: (1) the supervised releasee "waives the hearing;" or (2) "the relief sought is favorable to the [releasee] and does not extend the term of probation or of supervised release; and . . . an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so." Rule 32.1(c)(2).

Cordero maintains that the sealed order impermissibly modified the terms of his supervised release and effectively imposed a new occupational restriction without the required evidentiary hearing under Rule 32.1(c) and without the necessary findings under U.S.S.G. § 5F1.5.[9] We disagree.

---

[9] An occupational restriction is a term or condition of supervised release that "prohibit[s] the defendant from engaging in a specified occupation, business, or profession, or limit[s] the

11

The district court's order made it clear that it was merely enforcing standard condition #13 of Cordero's supervised release, which provided that "[a]s directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement." The district court's directive in the sealed order that Cordero must disclose details about the work he performs and notify potential clients—*i.e.*, third parties—of his "sexual offender status" is entirely consistent with the enforcement of this original condition of his supervised release and is not a new occupational restriction. *See* 18 U.S.C. § 3603(3) (authorizing a probation officer to "use all suitable methods, not inconsistent with the conditions specified by the court, to aid a probationer or a person on supervised release who is under his supervision, and to bring about improvements in his conduct and condition"); *see also United States v. Ritter*, 118

---

terms on which the defendant may do so." U.S.S.G. § 5F1.5. An occupational restriction may be imposed only if the district court determines that (1) there is "a reasonably direct relationship" between the defendant's occupation and the conduct relevant to the offense of conviction, and (2) that the restriction "is reasonably necessary to protect the public because there is a reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted." U.S.S.G. § 5F1.5(a); *see also* 18 U.S.C. § 3583(d) (providing that the district court has the discretionary authority to impose "as a further condition of supervised release" "any condition set forth . . . in [§] 3563(b) and any other condition it considers to be appropriate" in light of certain § 3553(a) factors and provided that the restriction is consistent with the Sentencing Commission's policy statements); 18 U.S.C. § 3563(b) (authorizing the imposition of occupational restrictions).

12

F.3d 502, 506 n.4 (6th Cir. 1997) (noting, albeit in dicta, that "notifying an employer of a supervisee's conviction falls within" the standard third-party notification provision, and "absent a more explicit court order, the probation office clearly exercises discretion in the decision to require a supervisee to advise an employer of a conviction"). Because the enforcement of a pre-existing condition was not a modification of Cordero's supervised release, an evidentiary hearing was not required under Rule 32.1(c).

To the extent that Cordero argues that, even if the sealed order did not modify the conditions of his supervised release, the original third-party notification condition amounts to an occupational restriction because it encompasses notifications to prospective employers and is therefore invalid because the district court failed to make the necessary findings under U.S.S.G. § 5F1.5, his argument fails. Cordero failed to file a direct appeal challenging the scope of the third-party notification provision following his 2013 sentencing. *See United States v. Zinn*, 321 F.3d 1084, 1088 (11th Cir. 2003) ("The district court's sentence, of which the conditions of supervised release are a part, is a final judgment immediately appealable to this Court."). As the government correctly notes, any appeal of the original conditions would now be both untimely—more than seven years have passed since his 2013 judgment and under Rule 4(b) an appeal must be filed within

13

14 days of entry of the judgment—and otherwise barred by the sentence-appeal waiver.[10]

Accordingly, because the district court did not add an occupational restriction or otherwise modify the conditions of Cordero's supervised release when it entered the July 2017 sealed order, no evidentiary hearing was required, and the district court was not required to address the U.S.S.G. § 5F1.5 factors. Consequently, Cordero is not entitled to relief on this claim.[11]

---

[10] Cordero argues in his reply brief that any challenge to the scope of the third-party notification provision was not ripe until the district court extended it to his potential clients, such that his present appeal is timely. However, this argument is undermined by the cases he cites because all of those cases challenged the scope of the third-party notification provision on direct appeal. *See, e.g.*, *United States v. Mike*, 632 F.3d 686, 698 (10th Cir. 2011); *United States v. Souser*, 405 F.3d 1162, 1163 (10th Cir. 2005); *United States v. Britt*, 332 F.3d 1229, 1232 (9th Cir. 2003); *United States v. Peterson*, 248 F.3d 79, 85–86 (2d Cir. 2001).

Regardless, even assuming arguendo that his challenge to the scope of the third-party notification provision was not ripe until the district court entered the July 2017 order enforcing the provision, any challenge related to the conditions of his supervised release imposed at his 2013 sentencing is barred by the sentence-appeal waiver. Specifically, Cordero "expressly waive[d] the right to appeal [his] sentence on any ground . . . except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court . . .; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution[.]" At the change-of-plea hearing, the magistrate judge reviewed the terms of the appeal waiver and Cordero confirmed that he understood and that he did not have any questions. Thus, the appeal waiver is valid and enforceable and bars any challenge to the scope of the original conditions. *See United States v. Boyd*, 975 F.3d 1185, 1190 (11th Cir. 2020) (explaining that a sentence-appeal waiver is valid if the government shows either that "(1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." (quotation omitted)); *see also Zinn*, 321 F.3d at 1088 ("The district court's sentence, of which the conditions of supervised release are a part, is a final judgment immediately appealable to this Court."); *United States v. Lonjose*, 663 F.3d 1292, 1300 (10th Cir. 2011) ("Supervised release conditions are set at sentencing as part of the original sentence[] and are encompassed within the right to appeal under 18 U.S.C. § 3742(a).").

[11] Relatedly, Cordero argues for the first time on appeal that the district court plainly

14

**B.    Denial of motion for modification of the conditions of Cordero's supervised release**

Cordero argues that the district court abused its discretion in denying his motion to modify the conditions of his supervised release, which requested the elimination of the internet access restriction. He maintains that the Supreme Court's decision in *Packingham* supports his request and establishes that the condition restricting his access to the internet violates his First Amendment rights and that the district court erred in failing to consider the relevant § 3553(a) factors.

We review the denial of a motion for modification of supervised release for abuse of discretion. *See Serrapio*, 754 F.3d at 1318. After considering certain § 3553(a) factors, a district court may modify the conditions of supervised release "at any time prior to the expiration or termination of the term." 18 U.S.C. § 3583(e)(2). The relevant § 3553(a) factors are: (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need for

erred when it failed to construe his motion for clarification as a motion for reconsideration of the July 2017 sealed order. However, there was no basis for treating the motion for clarification as a motion for reconsideration. The motion did not mention the sealed order. In fact, Cordero acknowledged in the district court proceedings that, at the time that he filed the motion for clarification, he was unaware of the sealed order. While *pro se* pleadings are liberally construed and federal courts should look beyond the label of the pleadings to determine whether they are properly characterized, *United States v. Stossel*, 348 F.3d 1320, 1322 n.2 (11th Cir. 2003), a court may not "serve as *de facto* counsel for a party" or rewrite a pleading, *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). Thus, given the contents of the motion and Cordero's lack of knowledge of the sealed order at the time he filed the motion for clarification, there was no basis for construing the motion for clarification as a motion for reconsideration of the sealed order.

deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational and vocational training, medical care, or correctional treatment; (6) the applicable guideline range; (7) any pertinent policy statements set forth by the Sentencing Commission; (8) the need to avoid unwarranted sentencing disparities; and (9) the need to provide restitution.[12] *See* 18 U.S.C. § 3583(e) (cross-referencing 18 U.S.C. § 3553(a)(1), (2)(B)–(D), (4)–(7)).  "[T]he district court need not explain each factor's applicability, nor always explicitly articulate that it considered the factors." *United States v. Johnson*, 877 F.3d 993, 998 (11th Cir. 2017).  Rather, "the court's order, in light of the record, must indicate that the court considered the [§ 3553(a)] factors enumerated in the [relevant] provision." *Id.*  Thus, when as here, the district court summarily denies a motion, "the record must clearly imply that the relevant factors were considered—enough so that meaningful appellate review of the factors' application can take place, rather than speculation of whether they were taken into account in the first place." *Id.*[13]

---

[12] "It is not necessary for a special condition to be supported by each § 3553(a) factor; rather, each factor is an independent consideration to be weighed." *United States v. Tome*, 611 F.3d 1371, 1376 (11th Cir. 2010).

[13] Recently, we remanded two cases after concluding that we could not engage in meaningful appellate review where the district court's discussion and the record were not sufficient to reflect that the district court considered the applicable § 3553(a) factors. *See, e.g.*, *United States v. Cook*, 998 F.3d 1180, 1185–86 (11th Cir. 2020); *United States v. Stevens*, 997 F.3d 1307, 1317–18 (11th Cir. 2020).  Here, however, as discussed further in this opinion, we are able to conduct meaningful appellate review under the facts and circumstances of this case.

Cordero discussed the § 3553(a) factors at length in his motion to modify the conditions of his supervised release, arguing that the internet restriction was a greater deprivation of liberty than is reasonably necessary to achieve the purposes of § 3553(a) and should be eliminated. In response, the government argued that the internet restriction "comports with all factors described in [§] 3553(a)" and was appropriate in light of Cordero's conviction for a sex offense that involved the use of the internet. In denying the motion to modify, the district court stated that it had reviewed Cordero's motion and the government's response. Thus, although the district court did not discuss explicitly the § 3553(a) factors, the record as a whole supports the conclusion that the district court considered the relevant § 3553(a) factors when denying the motion to modify. *See id.*

Furthermore, the § 3553(a) factors supported the existence of an internet restriction. Cordero was convicted of accessing child pornography via the internet. The Sentencing Guidelines contain a policy statement specifying that for individuals convicted of a sex offense—including as here convictions for violating § 2252 under Chapter 110 of Title 18 of the United States Code—a special condition of supervised release "limiting the use of a computer or an interactive computer service in cases in which the defendant used such items" is recommended. U.S.S.G. § 5D1.3(d)(7)(B). And, in numerous decisions involving sex offenses that relied upon a computer, we uniformly have "upheld conditions

17

limiting computer access, emphasizing that such access could well enable a sex offender to offend once again." *United States v. Carpenter*, 803 F.3d 1224, 1239 (11th Cir. 2015) (collecting cases). Thus, consideration of the relevant § 3553(a) factors—including the nature and history of the offense and personal characteristics of Cordero, the need to protect the public and deter future criminal activity by Cordero, and the pertinent policy statements of the Sentencing Commission—all supported the continued existence of an internet restriction as a condition of Cordero's supervised release. *See id.*; *see also Tome*, 611 F.3d at 1376 ("[W]hile the Sentencing Guidelines recognize that a condition of supervised release should not unduly restrict a defendant's liberty, a condition is not invalid simply because it affects a probationer's ability to exercise constitutionally protected rights." (quotation omitted)).

With regard to Cordero's argument that the internet restriction should be eliminated because it was unconstitutional in light of the Supreme Court's *Packingham* decision,[14] we join the Second, Fifth, and Ninth Circuits in holding

---

[14] In *Packingham*, the Supreme Court considered the constitutionality of a North Carolina statute that made it a felony for any registered sex offender to access various social media websites that the sex offender knew permitted children to be present as users/members. 137 S. Ct. 1730, 1733–34, 1737–38 (2017). The Supreme Court held that, even assuming the statute was only subject to intermediate scrutiny, it was unconstitutional and violated the First Amendment because it was too broad in its reach. *Id.* at 1736–38. Additionally, although not an issue before the *Packingham* Court, the Court noted that it was also "troubling" that the North Carolina law applied to sex offenders "who already ha[d] served their sentence and [were] no longer subject to the supervision of the criminal justice system." *Id.* at 1737. Despite holding that the law violated the First Amendment, the Court cautioned that its opinion "should not be

that § 3582(e)(2) cannot be used to challenge the legality or constitutionality of supervised release conditions.  *See United States v. Lussier*, 104 F.3d 32, 34 (2d Cir. 1997) (holding that the plain language of § 3583(e)(2) indicates illegality is not a proper ground for modification of a condition of supervised release); *United States v. Hatten*, 167 F.3d 884, 886 (5th Cir. 1999) (holding that the district court did not have jurisdiction to modify condition of supervised release on illegality grounds); *United States v. Gross*, 307 F.3d 1043, 1044 (9th Cir. 2002) (holding that illegality was not a proper ground to modify a supervised release term). Simply put, § 3583(e)(2) is not a vehicle to collaterally attack the legality of a defendant's sentence.  Rather, § 3582(e) sets forth the factors a court should consider in determining whether to modify or terminate a condition of supervised release and illegality or constitutionality is not one of them.  *See* 18 U.S.C. § 3582(e).  Arguments concerning the legality or constitutionality of a defendant's sentence are reserved properly for direct appeal or a 28 U.S.C. § 2255 motion to vacate sentence.

Moreover, notwithstanding that Cordero's § 3582(e)(2) motion was an improper vehicle for raising his *Packingham* challenge, we note that our decision in *United States v. Bobal*, 981 F.3d 971, 977 (11th Cir. 2020), squarely forecloses

---

interpreted as barring a State from enacting more specific laws" that were "narrowly tailored [to] prohibit a sex offender from engaging in conduct that often presages a sexual crime."  *Id.*

his claim that the internet restriction is unconstitutional as a matter of law. Specifically, in *Bobal*, the defendant argued that the special conditions of his lifetime term of supervised release that he could "not possess or use a computer that contains an internal, external or wireless modem without the prior approval of the Court" and that he could "not possess or use any computer; except that [he] may, with the prior approval of the Court, use a computer in connection with authorized employment" were unconstitutional in light of *Packingham*. *Id.* at 975. We disagreed, explaining that *Packingham* was distinguishable because (1) "the state law in *Packingham* restricted sex offenders even after they had completed their sentences"; (2) "the state law in *Packingham* applied to all registered sex offenders, not only those who had used a computer or some other means of electronic communication to commit their offenses"; and (3) "unlike the state law in *Packingham*, Bobal's computer restriction [was] not a complete bar to the exercise of [his] First Amendment rights. Instead, it allow[ed] [him] to obtain court permission to use a computer in connection with employment." *Id.* at 977 (quotation omitted). Thus, we concluded that "[n]othing in *Packingham* undermines the settled principle that a district court may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens during supervised release." *Id.* (quotation omitted).

20

Accordingly, the district court did not abuse its discretion in denying Cordero's motion to modify the conditions of his supervised release which sought the elimination of the internet restriction.

**C.    Denial of the motion for early termination of supervised release**

Cordero argues that the district court abused its discretion in denying his motion for early termination of supervised release by ignoring evidence that established that he is not at risk for recidivism and failing to consider the § 3553(a) factors. He maintains that the district court's failure to give any explanation for its denial of his motion for early termination effectively denies meaningful appellate review.

Section 3583(e)(1) provides that the district court:

> may, after considering the factors set forth in [§] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e)(1). "We review a district court's denial of a motion for early termination of supervised release [pursuant to § 3583(e)(1)] for an abuse of discretion." *Johnson*, 877 F.3d at 997. As discussed previously, when the district court summarily denies a motion, "the record must clearly imply that the relevant factors were considered—enough so that meaningful appellate review of the

21

factors' application can take place, rather than speculation of whether they were taken into account in the first place." *Id.* at 998.

Like Cordero's motion to modify, his motion for early termination referenced and discussed the § 3553(a) factors and his recidivism arguments at length, and he also attached several cases from other district courts that discussed the applicable standard for motions for early termination. Additionally, the government made arguments that related to the § 3553(a) factors[15] and submitted a memo from Cordero's probation officer opposing early termination that discussed some of the relevant § 3553(a) factors, including "the kinds of sentence and the sentencing range." *See* 18 U.S.C. §§ 3583(e)(1), 3553(a)(2)(4). And as noted previously, the district court stated in the paperless order that it had reviewed Cordero's motion and the government's response. Thus, as with the motion to modify, the record establishes that the district court considered the relevant § 3553(a) factors and did not abuse its discretion in denying summarily the motion for early termination. *Johnson*, 877 F.3d at 998.

---

[15] For instance, the government asserted that the nature and circumstances of the offense demonstrated that Cordero has a prurient interest in children, which warranted continued supervised release to protect the public. Additionally, the government asserted that continued supervised release was necessary to provide Cordero with the necessary sex offender treatment, which he had not yet completed. Those facts relate to several of the § 3553(a) factors that § 3583(e)(1) directs district courts to consider when ruling on a motion for early termination, including "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed . . . to protect the public from future crimes of the defendant," and "to provide the defendant with needed . . . correctional treatment in the most effective manner." *See* 18 U.S.C. §§ 3583(e)(1), 3553(a)(1), (a)(2)(C), and (a)(2)(D).

22

III.    Conclusion

For these reasons, we conclude the district court did not abuse its discretion in entering the sealed order or denying Cordero's other motions, and we affirm.

**AFFIRMED.**