**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-12734

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

LAGARY WILLIAMS,
a.k.a Frog,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:22-cr-00040-MTT-CHW-1

_____

Before NEWSOM, LUCK, and KIDD, Circuit Judges.

PER CURIAM:

Lagary Williams pleaded guilty to conspiring to possess with the intent to distribute cocaine, cocaine base, fentanyl, and

methamphetamine.  His guideline range called for a 210- to 262-month prison sentence.  But the district court varied upward, and sentenced Williams to 340 months, because the guideline range did not account for the full extent of Williams's criminal history and the fact that he supplied fentanyl to an individual who died from an overdose.

Williams appeals the variance, raising three grounds.  First, he argues that the district court violated his Fifth Amendment due process rights by not providing him advanced notice that it intended to impose an above-guideline sentence.  Second, he contends the district court clearly erred in considering an uncharged fentanyl overdose when imposing his sentence because there was insufficient causation evidence connecting him to the death.  Third, Williams asserts that the 340-month sentence was substantively unreasonable.  After careful review, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Williams distributed fentanyl, cocaine, and methamphetamine out of his apartment in Atlanta, Georgia.  Law enforcement (with a court order) wiretapped Williams's phone to investigate his drug operation.  On August 4, 2021, Williams received a call from one of his dealers who told Williams that the dealer supplied some of Williams's fentanyl to an addict who police found dead from a fentanyl overdose.  Williams then made another call to another dealer and explained that he knew his fentanyl was too potent.  Rather than telling the dealer to stop selling it, Williams told the dealer to change phones to avoid law enforcement.

When law enforcement (again, with a court order) arrived to search his apartment, Williams jumped out of his second story balcony. The search produced two handguns, 1,023 grams of methamphetamine, 2,417 grams of fentanyl, 60 grams of cocaine base, and 1,757 grams of cocaine. As a result of the search and the intercepted calls, the grand jury indicted Williams for conspiring to possess with the intent to distribute cocaine, cocaine base, fentanyl, and methamphetamine. Williams pleaded guilty.

Before his sentence hearing, the probation office prepared a presentence investigation report. The report laid out Williams's drug distribution network in the Atlanta area and how Williams's fentanyl caused the overdose death. The report also included Williams's criminal history, which included two convictions for possession with the intent to distribute marijuana, three for possession with an intent to distribute cocaine, one for trafficking cocaine, two for possession of a firearm during the commission of a felony, and two for driving while under the influence.

Based on Williams's criminal history, the report calculated his guideline range as 210 to 262 months' imprisonment. The report also gave two reasons for an upward variance: (1) the high risk of recidivism given Williams's "pattern of drug- and firearms-related offenses [he] has consistently engaged in since 2001"; and (2) the overdose death that was caused by Williams's fentanyl distribution.

At the sentence hearing, Williams did not object to the presentence investigation report. Instead, the district court

allowed, over Williams's objection, the government to present testimony about the fentanyl overdose. Special Agent Tyler Vanderberg of the Drug Enforcement Administration testified that Williams supplied fentanyl to dealers in the Atlanta area, that he supplied the fentanyl to the man who was found dead in a parking lot in August 2021, and that the man died from a fentanyl overdose. Special Agent Vanderberg explained that he knew Williams supplied the drugs because Williams admitted to it on an intercepted call. The government then played the call in which Williams bragged about his fentanyl's potency and admitted he had a customer recently die from an overdose. After playing the call, the government reiterated the reasons for varying upward that the probation office noted in its report, arguing that the district court should vary upward because the guideline range did not account for Williams's criminal history and his role in the overdose death.

The district court agreed with the government, varied upward, and sentenced Williams to 340 months' imprisonment. It found that Special Agent Vanderberg's testimony, the unobjected facts from the presentence investigation report, and the intercepted call gave the court sufficient evidence to conclude that Williams supplied the fentanyl that led to the overdose death. Based on Williams's role in the overdose death and his significant criminal history, the district court was convinced that a sentence within the guidelines range would be "insufficient to meet the sentencing factors as it [would] not adequately reflect [Williams's] personal history and characteristics . . . and would not promote respect for the

24-12734                Opinion of the Court                5

law, afford adequate deterrence to criminal conduct, or protect . . . from further crimes [Williams] may commit."

Williams appeals his sentence.

## STANDARD OF REVIEW

Three standards of review govern this appeal. First, "[w]e review de novo constitutional challenges to sentences." *United States v. Hall*, 965 F.3d 1281, 1293 (11th Cir. 2020) (citation omitted). Second, "we review a district court's factual findings only for clear error." *Id*. (citation omitted). And third, "[w]e review the reasonableness of a sentence for abuse of discretion." *United States v. Thomas*, 108 F.4th 1351, 1356 (11th Cir. 2024) (citation omitted).

## DISCUSSION

We split our discussion in three parts. First, we address whether the district court violated Williams's due process rights by failing to provide adequate notice that it intended to vary upward. Then, we review whether the district court erred in considering the overdose death when imposing Williams's sentence. And finally, we consider whether the sentence was substantively reasonable.

### *The Due Process Claim*

Williams first argues the district court violated his due process rights because it imposed "an upward departure without [advanced] notice." The Fifth Amendment prohibits depriving individuals "of life, liberty, or property, without due process of law." U.S. Const. amend. V. At sentencing, "[d]ue process requires that a criminal defendant have adequate notice of, and an opportunity

to contest, the facts used to support his criminal penalty." *United States v. Plasencia*, 886 F.3d 1336, 1343 (11th Cir. 2018). But "sentencing procedures are not required to be as exacting as those at trial" because "the degree of due process required . . . is only that which is necessary to ensure that the district court is sufficiently informed to enable it to exercise its sentencing discretion in an enlightened manner." *Id.* (quotations omitted).

Federal Rule of Criminal Procedure 32(h) requires a heightened process when a district court imposes an upward departure. See Fed. R. Crim. P. 32(h). It states that, "[b]efore the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure." *Id.*

A "'departure' is a term of art . . . and refers only to non-[g]uidelines sentences imposed under the framework set out in the [g]uidelines." *See United States v. Irizarry,* 553 U.S. 708, 714 (2008). Variances are distinct from departures. *See Hall*, 965 F.3d at 1295–96. "A variance is a sentence imposed outside the range when the [district] court determines that a guidelines sentence will not adequately further the purposes reflected in [section] 3553(a)." *Id.* Advanced notice is not required for variances because "[s]entencing is a fluid and dynamic process and the court itself may not know until the end [of the sentence hearing] whether a variance will be adopted, let alone on what grounds." *Irizarry*, 553 U.S. at 714. For that reason, holding a sentence hearing—in which the parties

present evidence and make arguments related to an appropriate sentence under the section 3553(a) factors—will generally comport with due process when the district court imposes a variance. *See id.*

"To determine whether the district court varied or departed, we look . . . to the [district] court's reasoning." *Hall*, 965 F.3d at 1295–96. If "it cited a specific guidelines departure provision in setting the defendant's sentence," then we conclude the district court imposed a departure. *Id.* at 1296. If "its rationale was based on the [section] 3553(a) factors and a determination that [a] guidelines range [sentence] was inadequate," then we conclude the district court imposed a variance. *See id.*

Here, the district court unequivocally imposed an upward variance, not a departure. In imposing Williams's sentence, the district court explained that a sentence within the guideline range would be "insufficient to meet the sentencing factors" in section 3553(a). Because the district court imposed a variance, it did not need to provide Williams advanced notice that it intended to do so. *See Irizarry*, 553 U.S. at 714; *Hall*, 965 F.3d at 1295–96. Instead, the district court complied with due process by providing Williams a sentence hearing where he was allowed to, and did, present evidence and argument relevant to imposing an appropriate sentence

under the section 3553(a) factors.  *See Irizarry*, 553 U.S. at 714; *Hall*, 965 F.3d at 1295–96.[1]

### The Overdose Death Finding

Next, Williams contends the district court clearly erred in finding that Williams caused the overdose death because there was insufficient causation evidence.  "A district court may . . . base its factual findings on undisputed statements in the [presentence investigation report] because a defendant is deemed to have admitted any such statements that he has not objected to 'with specificity and clarity.'"  *United States v. Aguilar-Ibarra*, 740 F.3d 587, 592 (11th Cir. 2014) (quoting *United States v. Beckles*, 565 F.3d 832, 842 (11th Cir. 2009)).  But if a defendant challenges the statements, then the government bears the burden to prove the fact by the preponderance of reliable evidence.  *See id.*; *see also United States v. Cenephat*, 115 F.4th 1359, 1368 (11th Cir. 2024).

Here, at his sentence hearing, Williams told the district court that he had no objections to the presentence investigation report.  The report clearly stated that Williams's fentanyl caused an overdose death.  By not objecting to the report, Williams admitted this fact.  *See Aguilar-Ibarra*, 740 F.3d 587 at 592.  Even if he did not admit it, the government submitted sufficiently reliable evidence supporting this fact by a preponderance of the evidence.

---

[1] In any event, Williams had advanced notice that an upward variance was possible based on the overdose death.  The presentence investigation report listed the overdose as a possible basis for a variance.

Special Agent Vanderberg's testimony established that the victim died from acute fentanyl poisoning and that Williams admitted on a recorded phone call that his fentanyl led to the overdose death. The call corroborated the special agent's testimony. Thus, the district court did not clearly err in finding that Williams caused the overdose death.

### The Substantive Reasonableness of the Sentence

Finally, Williams maintains that his 340-month imprisonment sentence was substantively unreasonable. A sentence is substantively reasonable when—looking at the "totality of the circumstances"—the sentence is "sufficient but not greater than necessary" under the factors "listed in [section] 3553(a)." *See United States v. Grushko*, 50 F.4th 1, 19 (11th Cir. 2022) (quotation omitted). The factors include: (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need for deterrence; (4) the need to protect the public from the defendant; (5) the need to provide the defendant with effective training or treatment; (6) the guideline range; (7) the Sentencing Commission's applicable policy statements; (8) the need to avoid sentence disparities; and (9) the need to provide restitution. *See* 18 U.S.C. § 3553(a); *see also United States v. Cordero*, 7 F.4th 1058, 1069 (11th Cir. 2021).

"When . . . weighing the . . . factors, the district court enjoys great discretion." *United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020). Thus, a district court only "abuses its discretion when it (1) fails to afford consideration to relevant factors that were

due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation omitted). In considering whether the district court abused its discretion, we have explained that "[a] sentence imposed well below the statutory maximum is an indicator of a reasonable sentence." *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014) (citation omitted).

Here, the district court did not abuse its discretion in imposing a 340-month sentence, which was below the statutory maximum of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A) (imposing life imprisonment as the statutory maximum for violating section 841(b)(1)(a)); *see also Stanley*, 739 F.3d at 656. Williams's criminal history—which included two convictions for possession with an intent to distribute marijuana, three for possession with an intent to distribute cocaine, one for trafficking cocaine, two for possession of a firearm during the commission of a felony, and two for driving while under the influence—showed a pattern of drug trafficking and firearm convictions. And his fentanyl trafficking caused an overdose death. Based on these facts, we cannot say that the district court abused its discretion in concluding that a sentence within the guideline range would be "insufficient to meet the sentencing factors as it d[id] not adequately reflect [Williams's] personal history and characteristics, . . . would not promote respect for the law, afford adequate deterrence to criminal conduct, or protect . . . from further crimes [Williams] may commit."

**AFFIRMED.**