[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11063

_____

D.C. Docket No. 4:17-cr-00029-CAL-MSH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALLANDOE C. BOYD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(September 16, 2020)

Before BRANCH, MARCUS, Circuit Judges, and HUCK,* District Judge.

_____

* Honorable Paul C. Huck, United States District Judge for the Southern District of
Florida, sitting by designation.

BRANCH, Circuit Judge:

Allandoe Boyd decided to plead guilty and entered into a plea agreement wherein he waived "any right to an appeal or other collateral review" of his sentence unless "the District Court imposes a sentence that exceeds the advisory guideline range." At sentencing, the district court determined that the advisory guideline range was 110 to 120 months and sentenced Boyd to 120 months of imprisonment, three years of supervised release, and a mandatory $100 assessment fine. Despite this within guidelines sentence and his sentence-appeal waiver, Boyd contends that his appeal is nonetheless permissible because he is arguing that the district court incorrectly calculated the guideline range in the first instance. Because we conclude that the sentence-appeal waiver is unambiguous and was made knowingly and voluntarily, we GRANT the government's motion to dismiss.

## I.    Background

In August 2017, Boyd was charged by a superseding Information with possession of a firearm by a convicted felon.[1] Boyd waived his right to a grand jury indictment and pleaded guilty, pursuant to a written plea agreement. In relevant part, the plea agreement provided that Boyd faced a maximum sentence of 10 years' imprisonment, followed by three years of supervised release, and that the

---

[1] In July 2017, a federal grand jury initially indicted Boyd on charges of possession of a firearm by a convicted felon (Count 1), possession of a firearm in furtherance of a drug trafficking crime (Count 2), and possession with intent to distribute heroin (Count Three).

district court would determine the advisory guideline range after the presentence investigation report ("PSI") was completed by the United States Probation Office. The plea agreement cautioned that the district court was "not bound by any estimate of the advisory sentencing range that defendant may have received from defendant's counsel, the government, or the Probation Office." Further, Boyd could not "withdraw [his] plea because [he] has received an estimated guideline range from the government, [his] counsel, or the Probation office which is different from the advisory guideline range computed by the Probation Office in the [PSI] and found to be the correct advisory guideline range." The plea agreement explained that Boyd would have an opportunity to object to the PSI and information contained therein, but that "any objections or challenges by [Boyd] or [his] attorney to the [PSI], the Court's evaluation and rulings, or the Court's sentence, [would] not be grounds for withdrawal of the plea of guilty." In addition, the agreement explained that the district court had "the discretion to impose a sentence that is more severe or less severe than the advisory guideline range." Finally, the sentence-appeal waiver in the plea agreement provided as follows:

> The defendant understands that ordinarily Title 18, United States Code, Section 3742, will in certain cases allow for a direct appeal after sentencing followed by the Court of Appeals' limited review of a defendant's sentence. But once this agreement is accepted and sentence is imposed by the District Court, defendant by this agreement forever waives any right to an appeal or other collateral review of defendant's sentence in any court, other than any claim of ineffective assistance of counsel. *However, in the event that the*

3

*District Court imposes a sentence that exceeds the advisory guideline range*, then the defendant shall retain only the right to pursue a timely appeal directly to the Court of Appeals after the District Court imposes its sentence.  In the event that the defendant retains the right to a direct appeal, that right is limited to appealing sentencing issues only.  The defendant and the United States Attorney agree that nothing in this plea agreement shall affect the government's right or obligation to appeal as set forth in Title 18, United States Code, Section 3742(b).  If, however, the United States Attorney appeals the defendant's sentence pursuant to this statue [sic], the defendant is released from defendant's waiver of defendant's right to appeal altogether.

(emphasis added).  Boyd initialed each page of the agreement, affirmed that he read and discussed the plea agreement with his attorney, and that he fully understood it and agreed to its terms, and signed the agreement.  Boyd's counsel also signed the agreement.

At the change-of-plea hearing, the district court conducted a plea colloquy consistent with Rule 11 of the Federal Rules of Criminal Procedure.[2]  In relevant part, the district court advised Boyd that the guidelines were advisory, that it would "calculate the advisory guideline range," and that it would consider that range along with other relevant factors in determining the appropriate sentence.  The district court also explained that the sentence it imposed on Boyd might differ from

---

[2] Rule 11(b) sets out the procedures that district courts must follow when accepting guilty pleas.  *See* Fed. R. Crim. P. 11(b).  These procedures are designed to address the three "core objectives" necessary for a knowing and voluntary guilty plea: (1) that the defendant enters his plea free from coercion, (2) that he understands the nature of the charges, and (3) that he understands the consequences of his plea.  *See United States v. Monroe*, 353 F.3d 1346, 1354 (11th Cir. 2003).

any prior estimate that he may have received, and that the court could impose a sentence that was more or less severe than the applicable guideline range. Boyd confirmed that he understood this information. Boyd also confirmed that he had discussed the plea agreement with his attorney and that he had read and understood it. The district court advised Boyd that, per the plea agreement, if the district court "sentence[d] [him] within the advisory guideline range, [he would] not be able to appeal that sentence or ever attack it in any way through a direct appeal or some collateral attack such as habeas corpus[,]" and Boyd stated that he understood. The district court ultimately accepted Boyd's guilty plea, concluding that he was competent and capable, understood the consequences of the plea, and that he entered into the plea knowingly and voluntarily.

In preparing the PSI using the 2016 United States Sentencing Guidelines Manual, the probation office determined that Boyd's base offense level was 22, pursuant to U.S.S.G. § 2K2.1(a)(3),[3] because Boyd possessed a semiautomatic firearm capable of accepting a large capacity magazine and he had a prior felony conviction for a controlled substance—a 1999 Georgia conviction for possession of marijuana with intent to distribute. Six additional offense points were assessed

---

[3] Section 2K2.1 of the Sentencing Guidelines sets forth the base offense level for unlawful possession of firearms. *See* U.S.S.G. § 2K2.1. The base offense level is "22, if (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. § 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." *Id.* § 2K2.1(a)(3).

because the offense involved multiple firearms and Boyd possessed the firearms in connection with another felony offense (trafficking heroin). With a three-point reduction for acceptance of responsibility, Boyd's total adjusted base offense level was 25, which when combined with his category VI criminal history score, resulted in an advisory guideline range of 110 to 120 months' imprisonment.

Prior to sentencing, Boyd objected to the guidelines calculation in the PSI, arguing, as relevant to this appeal, that his prior Georgia conviction for possession with intent to distribute marijuana did not qualify as a "controlled substance offense" for purposes of the Guidelines because it is "categorically overbroad." The probation office maintained that it had properly calculated the guideline range, but acknowledged that if Boyd was correct, his base offense level would by lowered to 17 with a resulting guideline range of 51 to 63 months' imprisonment.

At sentencing, after hearing argument from Boyd's counsel, the district court overruled Boyd's objection and determined that the total adjusted base offense level was correctly calculated at 25 and the resulting guideline range was 110 to 120 months' imprisonment. The district court sentenced Boyd to 120 months' imprisonment, followed by three years of supervised release. This appeal followed. The government has moved to dismiss this appeal based on the sentence-appeal waiver.

## II.    Discussion

"A plea agreement is, in essence, a contract between the Government and a criminal defendant.  Among the considerations that a defendant may offer as part of such a contract is waiver of his right to appeal, provided that the waiver is made knowingly and voluntarily."  *United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999).  "When a defendant attempts to appeal a sentence in the face of an appeal waiver, the government may file a motion to dismiss the appeal based upon the waiver."  *United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997).  Where the government seeks to enforce an appeal waiver, "[it] must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver."  *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993).  "We have consistently enforced knowing and voluntary appeal waivers according to their terms."  *United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006) (collecting cases).  We review "the validity of a sentence appeal waiver *de novo*." *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008).  Boyd argues that the appeal waiver does not bar his appeal because its language was ambiguous, and it was not knowingly and voluntarily made.  We address each argument in turn.

**A.    Boyd's appeal waiver is unambiguous and it bars this appeal provided it is otherwise enforceable**

We interpret the language of a plea agreement according to its plain and ordinary meaning. *See United States v. Hardman*, 778 F.3d 896, 900 (11th Cir. 2014) ("The language of a plea agreement should be given its ordinary and natural meaning unless the parties indicate otherwise."); *United States v. Rubbo*, 396 F.3d 1330, 1334 (11th Cir. 2005) (explaining that the terms of plea agreements should be interpreted according to "their usual and ordinary meaning"). "[I]n determining the meaning of disputed terms, the court applies an objective standard and eschews both 'a hyper-technical reading of the written agreement' and 'a rigidly literal approach in the construction of the language.'" *Hardman*, 778 F.3d at 900 (quoting *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004)). "When a plea agreement is ambiguous, it 'must be read against the government.'" *Copeland*, 381 F.3d at 1105–06 (quoting *Raulerson v. United States*, 901 F.2d 1009, 1012 (11th Cir. 1990)).

The appeal waiver in this case allows Boyd to appeal if his sentence "exceeds the advisory guideline range."[4]  Boyd argues that ambiguities in the plea

---

[4] The sentence-appeal waiver also contains exceptions that permit Boyd to raise an ineffective-assistance-of-counsel claim and release him from the appeal waiver if the government files a notice of appeal.  But neither of these exceptions are relevant to this appeal.

agreement must be construed against the government, and in his case an ambiguity is present because the appeal waiver did not specify who will calculate the guideline range. Accordingly, we turn to the plain, ordinary meaning of "the advisory guideline range."

It is well-established that only the district court determines the guideline range. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1342 (2016) ("At the outset of the sentencing proceedings, the district court must determine the applicable Guidelines range."); *see also* U.S.S.G. § 1B1.1(a) ("The court shall determine the kinds of sentence and the guideline range as set forth in the guidelines . . . ."). In other words, the guideline range does not exist until it is calculated by the district court during the sentencing proceedings.

Furthermore, in this case, the remainder of Boyd's plea agreement put to rest any doubt as to the final arbiter of the guideline range. It emphasized repeatedly that the district court would determine the guideline range after it received the PSI and that any estimates as to the applicable guideline range Boyd may have received from his counsel, the government, or the probation office were non-binding and could not serve as a basis for withdrawing his plea. Therefore, we hold that the

9

phrase "the advisory guideline range," as used in the plea agreement here, unambiguously refers to the guideline range as determined by the district court.[5]

Accordingly, pursuant to the terms of the plea agreement, Boyd was barred from appealing his sentence—including any contested issues underlying his sentence, such as the court's calculation of the guideline range or any rulings at sentencing—unless his sentence exceeded the applicable advisory guideline range of 110 to 120 months' imprisonment. Boyd's 120-month sentence was within the guideline range and therefore does not fall within any of the enumerated exceptions, and he did not otherwise preserve his right to appeal the guideline calculation. In other words, to reach the merits of Boyd's challenges to his sentence, in spite of the appeal waiver, would deprive "the government of the

---

[5] At oral argument, Boyd asserted that according to his reading of the appeal waiver he would be barred only from bringing frivolous claims as it pertains to the Guidelines, but he could appeal any other matter "if it's a guidelines issue." But "[w]aiver would be nearly meaningless if it included only those appeals that border on the frivolous." *United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999). Rather, "[a]n appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error." *United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir. 2005). Furthermore, such a reading would circumvent the purpose of a sentence-appeal waiver and would render such waivers effectively meaningless. As we explained previously,

> plea agreements containing such waivers save the government time and money by conveying an immediate and tangible benefit in the saving of prosecutorial resources. A sentence appeal waiver is also of value to a defendant, because it is another chip the defendant can bring to the bargaining table and trade for additional concessions from the government. Requiring the government to file an appeal brief even though there is an appeal waiver substantially diminishes the value of the waiver to the government, and by extension to defendants who are willing to bargain away their right to appeal the sentence.

*Buchanan*, 131 F.3d at 1008 (internal citations omitted).

benefit that it has bargained for and obtained in the plea agreement containing the sentence waiver." *Buchanan*, 131 F.3d at 1008.  Consequently, the appeal waiver bars the instant appeal provided that it is enforceable, which leads us to Boyd's second argument—that the waiver was not knowingly and voluntarily made.

## B.    The Rule 11 Colloquy Established that Boyd's Appeal Waiver was Knowing and Voluntary

Boyd argues that the appeal waiver was not knowingly and voluntarily made because the district court "did not discuss the appeal waiver" at the change-of-plea hearing and did not "describe any of the three exceptions to the waiver."  He further argues that the district court did not make clear that he was waiving his right to appeal any disputed guidelines calculations.  We disagree.

Boyd's appeal waiver was knowing and voluntary because the district court specifically questioned him about the waiver during the plea colloquy.  *See Bushert*, 997 F.2d at 1351.  During the plea colloquy, the district court expressly advised Boyd that, per the sentence-appeal waiver, if it "sentence[d] [him] within the advisory guideline range, [he would] not be able to appeal that sentence or ever attack it in any way through a direct appeal or some collateral attack such as habeas corpus[,]" and Boyd stated that he understood.  While the district court may not have discussed all the exceptions to the waiver—that Boyd could appeal a sentence that exceeded the guideline range, that he was released from the waiver if the government appealed, and that he could still pursue an ineffective-assistance-

11

of-counsel claim—its failure to question Boyd about all of the possible exceptions to the waiver does not alter whether the waiver was made knowingly and voluntarily, as the touchstone for assessing this question is whether it was "clearly convey[ed] to [the defendant] that he was giving up his right to appeal under *most* circumstances." *Id.* at 1352–53. By explaining to Boyd that, if he was sentenced within the guideline range, he would not be able to appeal or "ever attack" his sentence, the district court effectively conveyed to Boyd that he was giving up his right to appeal his sentence under most circumstances. And, although the district court did not expressly state that Boyd could not appeal any disputed guideline calculations, it advised him that it would calculate the guideline range and that his sentence could be outside that range and may be different from any other estimates he may have received. Moreover, prior to the plea colloquy, Boyd initialed each page of the plea agreement, including the page stating that he was giving up "any right to an appeal" except "in the event that the District Court imposes a sentence that exceeds the advisory guideline range." He also signed the portion of the plea agreement stating that he had read the agreement in its entirety, had discussed it with his counsel, and understood the terms of the agreement. And, during the plea colloquy, Boyd confirmed that he read and discussed the plea agreement with his counsel and that he understood the terms. Accordingly, it is manifestly clear from the record that the sentence-appeal waiver was knowingly and voluntarily made

and is enforceable. *Id.* at 1351; *see also United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001) (enforcing an appeal waiver where "the waiver provision was referenced during [the defendant's] Rule 11 plea colloquy and [the defendant] agreed that she understood the provision and that she entered into it freely and voluntarily.").

### III.    Conclusion

Accordingly, Boyd's sentence-appeal waiver is valid, enforceable, and forecloses this appeal.  Therefore, we **GRANT** the government's motion to dismiss.

**APPEAL DISMISSED.**