[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10009

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JAMES MEDARD,
 a.k.a. James Menard,
a.k.a. James Joseph,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:21-cr-20241-KMW-1

———————————

Before GRANT, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

James Medard appeals his convictions and total sentence of 81 months' imprisonment for wire fraud and aggravated identity theft. He argues that his guilty plea and his waiver of the right to appeal his sentence are invalid because neither was knowingly and voluntarily entered, and he challenges his sentence on several grounds. We conclude that both Medard's guilty plea and his sentence appeal waiver were knowing and voluntary, and we therefore affirm.

## I.

A federal grand jury charged Medard with thirteen counts of wire fraud, in violation of 18 U.S.C. § 1343; seven counts of money laundering, in violation of 18 U.S.C. § 1957; and four counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. Medard entered into a written plea agreement with the government in which he agreed to plead guilty to one count of wire fraud (Count 9 of the indictment) and two counts of aggravated identity theft (Counts 22 and 23), and the government agreed to dismiss the remaining charges. Medard also agreed to waive his right to appeal his sentence except if the district court imposed a sentence above the statutory maximum or above the Sentencing Guidelines range calculated by the court at sentencing, or if the government

appealed.  Medard and his counsel each signed the plea agreement and a supporting factual proffer.

The district court conducted a change-of-plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  At the conclusion of the hearing, the court found that Medard was competent and aware of the nature of the charges and the consequences of pleading guilty; and that his plea was knowing, voluntary, and supported by an independent basis in fact satisfying each of the essential elements of the offenses.  The court therefore accepted his guilty plea and adjudicated him guilty as charged in Counts 9, 22, and 23 of the indictment.

At sentencing, the district court calculated a Guidelines range of 33–41 months in prison for Count 9, which carried a statutory sentence of 0–20 years.  Counts 22 and 23 each carried a mandatory statutory penalty of two years in prison.  The district court imposed a total sentence of 81 months in prison, consisting of 33 months for Count 9 and 24 months consecutive for each of Counts 22 and 23, all followed by three years of supervised release.  Medard now appeals.

## II.

A guilty plea may be invalid if it is not entered knowingly and voluntarily.  *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005).  Rule 11 sets out steps that a district court must take during a change-of-plea hearing to ensure that a defendant's guilty plea is

knowing and voluntary. *United States v. Vonn*, 535 U.S. 55, 58 (2002). Before accepting a guilty plea, the district court must specifically address the three "core principles" of Rule 11 by "ensuring that a defendant: (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *Moriarty*, 429 F.3d at 1019.

Medard does not contend that his guilty plea was coerced; he argues that he was not adequately informed of the nature of the charges against him and (to some extent) the consequences of his plea. He failed to raise these issues in the district court, so our review is for plain error only. *Id.* at 1018–19. The failure to address any of Rule 11's core principles constitutes prejudicial plain error. *United States v. Telemaque*, 244 F.3d 1247, 1249 (11th Cir. 2001).

Medard argues that flaws in the indictment and plea process made it impossible for him to understand the nature of the charges against him. Specifically, he argues that (1) the indictment was confusing because Counts 22 and 23 (the aggravated identity theft counts) each charged him with three counts of wire fraud, (2) the district court failed to adequately explain the elements of the charged offenses, and (3) the court erred in finding that the charges were supported by a sufficient factual basis.

Whether the court adequately informed the defendant of the nature of the charges against him "turns on a variety of factors, including the complexity of the offense and the defendant's intelligence and education." *Id.* Rule 11 does not specifically require that the court separately outline each element of each offense during

the plea colloquy; a statement by the court that incorporates "the substance of those elements" may be sufficient. *United States v. Wiggins*, 131 F.3d 1440, 1442–43 (11th Cir. 1997). For simple charges, "a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice." *Id.* at 1443 (quotation omitted). In other cases, "a factual proffer may set forth in such detail the facts of the crime that it effectively incorporates the substance of the elements of the offense." *United States v. Presendieu*, 880 F.3d 1228, 1239 (11th Cir. 2018).

The district court adequately addressed the Rule 11's second core principle here. The charges of wire fraud and aggravated identity theft were not complex, and Medard's education and experience lend weight to his testimony at the plea hearing that he understood the charges against him. He has college and graduate degrees in business administration and business management, and he has also owned or run several businesses, including businesses in finance and tax preparation. During the plea colloquy, the court questioned Medard about his background and education, and it advised him that he could ask questions of the court or consult with his attorney at any time during the hearing. The court confirmed that Medard had read the indictment and reviewed it and discussed the charges, the government's evidence, and his defenses with his attorney. It read the portions of the indictment containing the factual allegations and charges that were the subject of Medard's guilty plea, and it confirmed that Medard understood those charges. It also informed Medard in clear terms of the elements of

wire fraud and aggravated identity theft and confirmed that Medard understood what the government would have to prove.

Specifically, the court informed Medard that to prove the offense of wire fraud charged in Count 9, the government would have to prove beyond a reasonable doubt that (1) he knowingly devised or participated in a scheme to defraud or obtain money or property by using false pretenses, representations, or promises; (2) the false pretenses, representations, or promises were about a material fact; (3) he acted with the intent to defraud; and (4) he transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud. *See* 18 U.S.C. § 1343; *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009). Regarding the aggravated identity theft charges, the court explained that the government would have to prove beyond a reasonable doubt that (1) Medard knowingly transferred, possessed, or used another person's means of identification; (2) he did so without lawful authority; (3) the other person was a real person; and (4) Medard did these things during and in relation to another felony alleged in the indictment—in this case, the wire fraud offenses charged in Counts 7, 9, and 12. *See* 18 U.S.C. § 1028A; *United States v. Barrington*, 648 F.3d 1178, 1192 (11th Cir. 2011). Medard confirmed under oath that he understood the charges and their elements.

Contrary to Medard's argument, the indictment did not charge multiple crimes in each count of aggravated identity theft. The indictment alleged that the four specific aggravated-identity-

theft offenses charged in Counts 21–24 were committed "during and in relation to" the felony wire fraud offenses charged in Counts 7, 9, and 12.  The indictment then provided more specific details of the charged offenses for each count, showing that the unauthorized use of personal identifying information in various loan documents described in the aggravated-identity-theft counts was related to the electronic transmission of those documents alleged in the three specified wire-fraud counts.  Because one element of the offense of aggravated identity theft is that the offense be committed "during and in relation to" wire fraud or another enumerated felony offense, the indictment's allegation that each aggravated-identity-theft count was committed during or in relation to the specified wire-fraud offenses was necessary to fully charge a single offense of aggravated identity theft; it did not make the count duplicitous. *See* 18 U.S.C. § 1028A(a)(1), (c)(5).

As to the factual basis for Medard's guilty plea, the district court referred Medard to the seven-page factual proffer that Medard signed in connection with his plea agreement, confirming that Medard had "thoroughly read and review[ed] it" and thoroughly reviewed it with his attorney—including asking any questions he might have had about the language in the document and having those questions answered in full by his attorney—and that Medard had signed the factual proffer and initialed any changes. The court also confirmed that Medard agreed that the factual proffer accurately described his conduct with respect to the crimes charged.

The factual proffer established an adequate factual basis for Medard's guilty plea. It described Medard's scheme of knowingly and intentionally submitting fraudulent loan applications to the Small Business Administration using the SBA's online portal—despite the fact that, as a convicted felon who was on supervised release at the time, Medard was ineligible for the loans. The loan applications contained material misrepresentations and falsified supporting documents about who owned the relevant businesses, the number of people employed there, or about the businesses' finances. Two of the applications were granted, and Medard spent the loan proceeds on personal expenditures.

With respect to Count 9 (wire fraud), the factual proffer stated that as part of his scheme, Medard electronically submitted an Economic Injury Disaster Loan application that concealed his identity by (among other things) using the Social Security number of a minor child (A.L.) as his own. Regarding Count 22, the proffer stated that Medard electronically submitted a Paycheck Protection Plan loan application that falsely identified J.M.—who Medard knew to be a real person—as an employee of the company seeking the loan, without J.M.'s permission. (The electronic submission of the fraudulent loan application containing J.M.'s name was charged as wire fraud in Count 7 of the indictment.) And in support of Count 23, the proffer stated that Medard used the Social Security number of A.L., a minor child, on an Economic Injury Disaster Loan application that he submitted electronically (which corresponded to the wire fraud charged in Count 9).

As to the third "core principle," ensuring that the defendant understands the consequences of his plea, Rule 11 provides that before the court may accept a guilty plea, it "must inform the defendant of, and determine that the defendant understands" any applicable maximum or mandatory minimum penalty; any applicable forfeiture; the court's authority to order restitution; and the court's obligation to impose a special assessment. Fed. R. Crim. P. 11(b)(1)(H)-(L). A court's failure to advise a defendant of each of the enumerated items, even if preserved, is harmless error if there is no reasonable probability that the error affected his decision to plead guilty. *See* Fed. R. Crim. P. 11(h); *Dominguez Benitez*, 542 U.S. at 81.

Medard argues briefly that the district court failed to accurately inform him of the statutory term of imprisonment for aggravated identity theft and of the applicable forfeiture, but his argument is contradicted by the record. The district court advised Medard during the plea colloquy that each count of aggravated identity theft carried a mandatory statutory penalty of two years in prison. 18 U.S.C. § 1028A. In discussing the plea agreement, the court also confirmed that the parties had agreed to recommend that the two-year terms of imprisonment for the two aggravated-identity-theft charges run consecutively to each other and to the sentence for wire fraud, so that Medard would be sentenced to at least four years in prison regardless of what sentence the court imposed for the wire-fraud offense. The court also confirmed that Medard had agreed to a forfeiture money judgment in the amount

of $310,000 and to the forfeiture of certain real property. Medard's question during the plea colloquy about whether he would get an interim accounting after the forfeited real property was sold did not reflect any confusion about the forfeiture as a consequence of his guilty plea.

### III.

We turn next to Medard's argument that the sentence appeal waiver in his plea agreement was invalid, an issue that we review de novo. *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008). An appeal waiver is valid and enforceable if it was made knowingly and voluntarily. *Id.* The government can establish that a waiver was knowing and voluntary by showing "either that: (1) the district court specifically questioned the defendant about the waiver; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver." *Id.* For example, we have held that an appeal waiver was valid where the waiver was set out in the plea agreement and the defendant confirmed during the plea colloquy that she had read and understood the entire agreement, including the appeal waiver provision, and that she had agreed to the waiver provision freely and voluntarily. *United States v. Weaver*, 275 F.3d 1320, 1323, 1333 (11th Cir. 2001). Our "touchstone for assessing" whether a defendant entered a waiver knowingly and voluntarily is whether the district court "clearly convey[ed] to [the defendant] that he was giving up his right to

appeal under *most* circumstances." *United States v. Boyd*, 975 F.3d 1185, 1192 (11th Cir. 2020) (alterations and emphasis in original).

We are satisfied, based on the plea agreement and the plea colloquy, that Medard entered his sentence appeal waiver knowingly and voluntarily. The plea agreement clearly provided that Medard was waiving his right to appeal any sentence imposed, unless the sentence exceeded the statutory maximum sentence or the Sentencing Guidelines range calculated by the court. The provision also stated that if the government chose to exercise its right to appeal the sentence, Medard would be released from the appeal waiver. During the plea colloquy, the court confirmed that Medard had thoroughly reviewed the plea agreement with his attorney and understood the parties' respective obligations under the agreement. The court specifically discussed the appeal-waiver provision with Medard, confirming that he understood that he was generally giving up his right to appeal his sentence, except if the sentence exceeded the statutory maximum or the guideline range determined by the court. Medard's sentence appeal waiver is therefore valid, and since none of the enumerated exceptions apply, we decline to consider his arguments challenging the sentence imposed. *See Weaver*, 275 F.3d at 1333.

## IV.

The district court here fully addressed Rule 11's core principles during the change-of-plea hearing, ensuring that Medard's guilty plea was knowingly and voluntarily entered. The plea colloquy and the written and signed plea agreement also establish that

Medard entered his sentence appeal waiver knowingly and voluntarily, so that the waiver is valid and enforceable. We therefore affirm Medard's conviction and sentence.

**AFFIRMED.**