[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11334

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOSEPH GRAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:22-cr-00108-TFM-N-1

_____

_____

No. 23-11335

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOSEPH GRAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:22-cr-00109-TFM-N-1

_____

Before JORDAN, LUCK, and WILSON, Circuit Judges.

PER CURIAM:

Joseph Gray pled guilty, in two separate criminal cases, to one count of possession of a firearm by a convicted felon ("gun case") and one count of possession with intent to distribute

methamphetamine ("drug case"). He was sentenced to 240-month concurrent sentences on each count at a consolidated sentencing hearing. Mr. Gray's two plea agreements contained identical sentence appeal waivers. And his sentence in the gun case was enhanced under the Armed Career Criminal Act ("ACCA") after a jury found that he had three prior convictions for violent felonies that occurred on different occasions.

On appeal, with respect to his gun case, Mr. Gray argues that (1) his conviction under 18 U.S.C. § 922(g)(1) is unconstitutional under *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022); (2) his Alabama convictions of first-degree and second-degree robbery are not "violent felonies" under the ACCA; (3) the ACCA is unconstitutional because it requires that a judge determine whether a defendant has at least three predicate convictions that occurred on different occasions, in violation of the Fifth and Sixth Amendments, and because it is unconstitutionally vague; (4) there was insufficient evidence to prove to the jury that his prior convictions occurred on different occasions, and the district court abused its discretion by admitting the state court records of his prior convictions at the ACCA trial due to the fact that they constitute inadmissible hearsay; (5) the district court abused its discretion by precluding him from arguing at the ACCA trial about the dates of his prior convictions and about the fact that the sentences for those convictions were concurrent, and it abused its discretion with respect to the jury instructions and jury-verdict form; and (6) his 240-month sentence for his gun case violates the Eighth Amendment. With respect to his drug case, Mr. Gray argues that the

district court incorrectly calculated his guideline range and that his sentence violates the Eighth Amendment.

In response, the government argues that all of Mr. Gray's arguments on appeal, other than those with respect to the ACCA, are barred by his sentence-appeal waivers. Further, it asserts that we should not consider Mr. Gray's remaining ACCA arguments because they are foreclosed under the concurrent-sentence doctrine due to his unreviewable concurrent sentence in his drug case. Upon review of the record and consideration of the parties' briefs, we affirm in part and dismiss in part.

**I**

In June 2022, Mr. Gray was charged, in two separate cases, with one count of possession of a firearm by a convicted felon and one count of possession with intent to distribute methamphetamine. Mr. Gray pled guilty in both cases.

In his plea agreement in the gun case, Mr. Gray admitted that he had three prior convictions under Alabama law: one for robbery in the first degree and two for robbery in the second degree. That agreement also warned of the possibility of an ACCA enhancement.

Both plea agreements contained identical sentence-appeal waivers. The waivers stated that Mr. Gray "knowingly and voluntarily waives the right to file any direct appeal or any collateral attack," except that he retained the right to challenge "any sentence imposed in excess of the maximum" and "any sentence which constitutes an upward departure or variance from the advisory

guideline range," as well as the right to bring a claim of ineffective assistance of counsel on direct appeal or in a 28 U.S.C. § 2255 motion. Mr. Gray and his attorney signed both agreements, and Mr. Gray's signature was beneath the following statement:

> I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it.

The district court held a single change-of-plea hearing to address both cases at once. During that hearing, Mr. Gray confirmed to the district court that he had reviewed the agreements with his attorney before signing them, that he understood the terms of the agreements, and that no one had forced him to enter into the agreements. The court explained to Mr. Gray that though ordinarily a person who pleads guilty "may appeal their conviction or their sentence or both," he was "giving up [his] rights to do those things, with the certain limited exceptions" set out in his plea agreement. Mr. Gray again confirmed that he understood. The court then found that Mr. Gray was competent and capable of entering an informed plea, that he was aware of the consequences of his pleas, and that his pleas were knowing and voluntary.

After the district court accepted his pleas, Mr. Gray filed a motion requesting that a jury determine whether he qualified for an ACCA enhancement. Specifically, he disputed whether he had three predicate convictions that had been committed on different

occasions from each other pursuant to *Wooden v. United States*, 595 U.S. 360 (2022). The court granted Mr. Gray's request.

Prior to trial, the district court found that Mr. Gray's robbery convictions qualified as "violent felonies" under the ACCA and that argument on the sentencing date of his prior convictions was irrelevant to the jury's inquiry. The court then admitted the state court records of Mr. Gray's prior convictions under the business-records hearsay exception.

During the trial, Terrie Geter, a clerk for the Mobile County Circuit Court, identified the records of Mr. Gray's prior robbery convictions, which included indictments, case action summaries, grand jury charges, sentence orders, and notices of intent to plead guilty. Also included in the government's evidence was Mr. Gray's stipulation that he had been convicted of the Alabama robbery offenses.

Next, Lieutenant Stanley Ladnier of the Mobile Police Department testified that he investigated a robbery involving Mr. Gray that occurred on December 30, 2010. The victims of that robbery were Ashley Jones, Joseph Jones, and Lacynthia Robinson, all of whom he had interviewed. Mr. Gray matched the description of one of the perpetrators provided by the victims, and the victims were able to positively identify him.

Finally, Michael J. Sheets, a former officer of the Mobile Police Department, testified that he investigated a robbery involving Mr. Gray that occurred on November 29, 2011, at a Circle K in south Mobile. The victim in that case was Patricia Disney.

Officer Sheets also investigated another robbery involving Mr. Gray that occurred on December 1, 2011, at a Winn-Dixie in Mobile. The victim was Susan Corbin. The distance between the locations of the two robberies was "somewhere between six to eight miles."

After the close of evidence, Mr. Gray moved for judgment of acquittal, arguing that the evidence submitted by the government was insufficient to prove that the three offenses had occurred on different occasions. The district court denied the motion and the jury found that Mr. Gray had committed the three robberies on different occasions. Mr. Gray then renewed his motion, which the court again denied.

At sentencing, the district court adopted the PSI, finding that Mr. Gray's advisory guideline range was 262 to 327 months' imprisonment. Ultimately, the court sentenced Mr. Gray to 240 months' imprisonment on both counts, to run concurrently. The court entered judgment, and Mr. Gray timely appealed.

## II

We review the validity of a sentence-appeal waiver *de novo*. *See United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008). For an appeal waiver to be effective, "it must be knowing and voluntary." *United States v. Bushert*, 997 F.2d 1343, 1350–51 (11th Cir. 1993). "In order to prevail in its argument that this court should enforce a sentence appeal waiver, the government" must prove one of two things: "that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during

the [Fed. R. Crim. P.] 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Id.* at 1351.

If valid, "[a]n appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error." *United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir. 2005). And a defendant is "free to bargain away his right to raise constitutional issues." *United States v. Bascomb*, 451 F.3d 1292, 1297 (11th Cir. 2006).

In *United States v. Boyd*, 975 F.3d 1185, 1192 (11th Cir. 2020), we held that a sentence-appeal waiver was enforceable where the district court had not discussed all the exceptions to the waiver during the plea colloquy, but explicitly had mentioned to the defendant that, under the waiver, he could not appeal a sentence within the guideline range. We reasoned that the district court's explanation was sufficient because it informed the defendant that "he was giving up his right to appeal his sentence under most circumstances." *Id.* Further, we concluded that it was manifestly clear from the record that the waiver was knowing and voluntary because the defendant had signed and initialed each page of the plea agreement containing the appeal waiver, and he had confirmed during the plea colloquy that he had read the agreement, had discussed it with his counsel, and understood its terms. *See id.*

Here, the government has shown that Mr. Gray's sentence-appeal waivers were both knowing and voluntary. The record reflects that the district court specifically questioned Mr. Gray about

the appeal waivers during his plea colloquy. *See* D.E. 102 at 11–12. And Mr. Gray confirmed he understood that he was giving up his right to appeal his convictions and sentences except for "the certain limited exceptions" set out in his plea agreements. *See id.*

The district court did not go through each exception individually. But, as in *Boyd*, Mr. Gray had signed both plea agreements and confirmed during the plea colloquy that he had reviewed the agreements with his attorney and understood them. He also confirmed that he entered into the agreements voluntarily.

Because Mr. Gray knowingly and voluntarily agreed to waive his right to appeal his convictions and sentences save for certain enumerated exceptions, his sentence-appeal waivers are valid and enforceable. As a result, unless Mr. Gray's arguments fall within one of the sentence-appeal waivers' exceptions, his appeal will be barred.

To recap, the sentence-appeal waivers contain three narrow exceptions, allowing Mr. Gray to file an appeal (1) challenging sentences above the statutory maximum, (2) challenging sentences above the Sentencing Guidelines range, and (3) claiming ineffective assistance of counsel. Here, Mr. Gray's sentence was below his Sentencing Guidelines range, and he does not bring a claim of ineffective assistance of counsel. So, the only question left for us is whether his ACCA enhancement rendered his sentence "above the statutory maximum." All of Mr. Gray's other arguments on appeal are barred.

We have stated—albeit in dicta—that a challenge to an ACCA enhancement is not barred by an appeal waiver that reserves a defendant's right to appeal "any sentence in excess of the statutory maximum" where the sentence imposed exceeds the statutory maximum that would have applied without the enhancement. *See United States v. Jones*, 743 F.3d 826, 828 n.2 (11th Cir. 2014). We agree and think that statement applies here.

In this case, the district court imposed on Mr. Gray an enhanced sentence of 20 years' imprisonment. The statutory maximum for an offense under § 922(g) *without* an ACCA enhancement is 15 years' imprisonment. *See* 18 U.S.C. § 924(a)(8). The same offense *with* an ACCA enhancement requires a mandatory minimum sentence of 15 years and provides a maximum sentence of life imprisonment. 18 U.S.C. § 924(e). And the plea agreement's penalty section contains language acknowledging both of these as possibilities for Mr. Gray's "maximum penalty." If Mr. Gray is correct in his ACCA-based arguments, the maximum sentence the district court could have imposed for the gun case was 180 months. Those arguments come within the appeal waiver's exception for "any sentence imposed in excess of the statutory maximum."

### III

Mr. Gray asserts three challenges to his ACCA enhancement. First, Mr. Gray contends that his Alabama convictions of first-degree and second-degree robbery are not "violent felonies"

under the ACCA. Second, he says the ACCA is unconstitutional because it requires that a judge determine whether a defendant has at least three predicate convictions that occurred on different occasions, in violation of the Fifth and Sixth Amendments, and because it is unconstitutionally vague. And third, Mr. Gray makes several evidentiary arguments, including that the the district court abused its discretion by admitting the state court records of his prior convictions at the ACCA trial because they are inadmissible hearsay and by precluding him from arguing at the ACCA trial about the dates of his prior convictions and the fact that his sentences for those convictions were concurrent.[1]

## A

"We review de novo whether a defendant's prior conviction qualifies as a crime of violence for purposes of ACCA." *United States v. Ferguson*, 100 F.4th 1301, 1306 (11th Cir. 2024).

We have held, on review of an application to file a second or successive § 2255 motion, that the Alabama offense of first-degree robbery is a "violent felony" under the ACCA. *See In re Welch*, 884 F.3d 1319, 1323–24 (11th Cir. 2018). Then, in a direct criminal appeal, we held, based on *Welch*, that the Alabama offense of

---

[1] Mr. Gray also challenges the jury instructions and verdict form, as well as the sufficiency of the evidence underlying the jury's verdict on the different-occasions inquiry. But, by raising these claims only in passing in his initial appellate brief without substantive argument, he has abandoned them. *See United States v. Esformes*, 60 F.4th 621, 635 (11th Cir. 2023) ("[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.") (citation omitted).

second-degree robbery is a violent felony under the ACCA. *See United States v. Hunt*, 941 F.3d 1259, 1262 (11th Cir. 2019). Because we have expressly held that Mr. Gray's prior offenses are "violent felonies" for purposes of the ACCA, his arguments on this issue are foreclosed by binding precedent. The district court thus did not err by finding that Mr. Gray's prior convictions for Alabama first-degree and second-degree robbery are "violent felonies" under the ACCA.

## B

We review constitutional challenges to sentences *de novo*. *See United States v. Longoria*, 874 F.3d 1278, 1281 (11th Cir. 2017).

Under the ACCA, a person who violates § 922(g) and has three prior convictions for violent felonies or serious drug offenses that were "committed on occasions different from one another" is subject to an enhanced sentence. *See* 18 U.S.C. § 924(e)(1). The Supreme Court held in *Wooden*, 595 U.S. at 369, that the analysis for determining whether offenses occurred on a single or separate occasion is "multi-factored," requiring consideration of the timing of the offenses, "the proximity of location," and "the character and relationship of the offenses." It explained, "[f]or the most part, applying this approach will be straightforward and intuitive," noting that "[i]n many cases, a single factor—especially of time or place—can decisively differentiate occasions." *Id.* at 369–70. It also stated that straightforward examples included offenses committed "a day or more apart, or at a significant distance" and "a continuous stream of closely related criminal acts at one location," but it

acknowledged that "there will be some hard cases in between, as under almost any legal test." *Id.* at 370 (internal quotation marks omitted). It concluded, "[b]ut in law as in life, it is usually not so difficult to identify an 'occasion': Given that the term in ACCA has just its ordinary meaning, most cases should involve no extra-ordinary work." *Id.*

The Supreme Court later held that the Fifth and Sixth Amendments require that a jury, not a judge, determine whether a defendant's prior convictions occurred on different occasions from each other under the ACCA. *See Erlinger v. United States*, 144 S. Ct. 1840, 1852 (2024).

Mr. Gray's jury-trial challenge is foreclosed by *Erlinger*: The ACCA does not violate the Fifth and Sixth Amendments because it does not require that a judge conduct the different-occasions inquiry. What's more, the Fifth and Sixth Amendments were not violated in Mr. Gray's case because a jury explicitly found that his prior convictions for violent felonies occurred on different occasions.

And the ACCA is not unconstitutionally vague. "To overcome a vagueness challenge, statutes must 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly,' and 'must provide explicit standards for those who apply them.'" *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1310 (11th Cir. 2009) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). The ACCA meets this standard. The different-occasions inquiry turns on the

14                    Opinion of the Court                    23-11334

ordinary meaning of an "occasion" and has yielded an approach that the Supreme Court has called "straightforward and intuitive." *Wooden*, 595 U.S. at 370.[2]

## C

We review a district court's evidentiary ruling for abuse of discretion. *See United States v. Ahmed*, 73 F.4th 1363, 1373 (11th Cir. 2023). "As a practical matter, the abuse of discretion standard means that a district court has a range of choice." *United States v. Brown*, 415 F.3d 1257, 1265 (11th Cir. 2005). "We recognize a significant range of choice for the district court on evidentiary issues, which is to say we defer to its decisions to a considerable extent." *Id*. "Even if the district court makes an incorrect evidentiary ruling, we will not reverse harmless error." *Ahmed*, 73 F.4th at 1380. An evidentiary ruling is harmless if "other convincing evidence supports the verdict and any error had no substantial influence on the jury's verdict." *United States v. Gunn*, 369 F.3d 1229, 1236 (11th Cir. 2004).

Mr. Gray argues that the state court records of his prior convictions are inherently hearsay and should not have been admitted by the district court. But even if the district court abused its discretion in admitting these documents under the business-records hearsay exception, such error was harmless because "other convincing evidence support[ed] the verdict," and the records had no

---

[2] Given our resolution, we need not reach the government's concurrent-sentences argument.

"substantial influence on the jury's verdict." *Ahmed*, 73 F.4th at 1373. *See also Gunn*, 369 F.3d at 1236. The officers who had investigated Mr. Gray's robbery convictions testified—based on their personal knowledge of the events—that the first robbery occurred on December 30, 2010, the second occurred on November 29, 2011, and the third occurred on December 1, 2011. And where offenses were committed "a day or more apart, or at a significant distance," they plainly occurred on separate occasions. *See Wooden*, 595 U.S. at 369–70.

Mr. Gray further argues that the district court should have permitted him "to argue the circumstances of the previous convictions' sentencing event" and that his sentences were concurrent. But the court did not abuse its discretion by concluding that those arguments were irrelevant. "Evidence is 'relevant' under Rule 401 of the Federal Rules of Evidence if 'it has any tendency to make a fact more or less probable than it would be without the evidence' and 'the fact is of consequence in determining the action.'" *United States v. McGregor*, 960 F.3d 1319, 1323 (11th Cir. 2020) (quoting Fed. R. Evid. 401). To determine whether offenses occurred on different occasions, the Supreme Court has directed courts to look to the timing of the offenses, "the proximity of [their] location," and "the character and relationship of the offenses." *Wooden*, 595 U.S. at 369. How the offenses were charged or sentenced are not relevant factors in this analysis.

**IV**

16                    Opinion of the Court                    23-11334

We dismiss the appeal in part and affirm as to Mr. Gray's challenges to his ACCA enhancement for the gun case.

**DISMISSED IN PART and AFFIRMED IN PART.**